## THE STATE v. THOMAS HARRIS, Appellant.

### Division Two, November 13, 1912.

1. **ALIBI: Instruction: Not Authorized by Evidence.** Where it was shown by the testimony, including that of defendant, that at the time the fatal shots were fired defendant was in the crowd that had assembled by reason of a collision between a buggy and wagon and the altercation which followed between the owner of the buggy and the driver of the wagon, there was no question of alibi in the case, and defendant was not entitled to an instruction on the defense of alibi.

2. ———: ———: **Not Ground of Motion.** Even though an instruction on the defense of alibi may have been authorized by the evidence, the failure of the court to give such an instruction should have been made a ground of the motion for a new trial, and if that was not done such failure cannot be held to be error on appeal, or the point considered.

3. **CONFLICT IN EVIDENCE: Province of Court.** Although the testimony for the State that defendant was seen to come from his house with a pistol in his hand and fire the fatal shot at another which hit deceased, is pointedly contradicted by defendant and his witnesses, who testified that he had no pistol and did not shoot at all, the court cannot override a verdict of guilty, since it is for the jury to pass upon the credibility of witnesses and to determine the facts.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*Moore & Handy* and *Swearingen & Olson* for appellant.

(1)   The court erred in admitting irrelevant, incompetent and immaterial testimony on behalf of the State.   (2)   The court erred in failing to instruct the jury on all of the law governing the case.   State v. Howell, 100 Mo. 628; State v. Woodward, 111 Mo. 249; State v. Taylor, 118 Mo. 154; State v. Koplan, 167 Mo. 298; State v. Kennedy, 177 Mo. 132; Sec. 5231, R. S. 1909.   The court failed to give an instruction on defendant's evidence proving or tending to prove an alibi.   The entire evidence on behalf of the State tended to show that the defendant was from forty to fifty feet west of the wagon that was being driven east on Eighteenth street.   The defendant's testimony tended to prove that at the time of the shooting, the defendant was within a few feet of Brooklyn avenue trying to assist the man who had been beaten away from the scene of the trouble.   The defendant testifies that he was holding the man up in the wagon and trying to get him to take the lines at the time the shooting began.   He is corroborated by the witnesses, Herndon and Bolin.   If their evidence is true then the defendant was not at the place where the shots were fired at the time the shooting began.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

Where there is substantial evidence to support the verdict, the judgment will not be reversed on the ground that the verdict is against the evidence, or the weight of the evidence.   This court will not convert itself into a trier of the facts and undertake to find a different result from that of the jury.   State v. Alexander, 184 Mo. 266; State v. McCullough, 171 Mo. 574; State v. Sayman, 103 Mo. App. 141; State v. Thornhill, 177 Mo. 691; State v. McKenzie, 177 Mo. 699;

State v. Nave, 185 Mo. 125; State v. Tetrick, 199 Mo. 100; State v. Matthews, 202 Mo. 148; State v. Smith, 109 Mo. 706; State v. Williams, 186 Mo. 128; State v. Williams, 199 Mo. 137.

KENNISH, J.—Appellant Thomas Harris was prosecuted by information filed in the criminal court of Jackson county at the January term, 1909, upon a charge of murder in the first degree, for killing, by shooting with a pistol, one Frank Smith, at said county, on the 5th day of September, 1908. He was tried, convicted of murder in the first degree, his punishment fixed at imprisonment for life, and from the judgment he appealed to this court. The case was heard on appeal at the October term, 1910, with the result that the judgment was reversed and the cause remanded for a new trial. The decision of this court on said appeal is reported in the 232nd volume of the Missouri Reports; beginning at page 317.

At the April term, 1911, of said criminal court, appellant was a second time put upon his trial, convicted of murder in the second degree, his punishment being assessed at imprisonment in the penitentiary for a term of fifty years. He has again appealed to this court.

The evidence for the State tended to show that a young man named Harry Wilson, about 9 o'clock p. m. on September 5, 1908, driving a horse and single buggy, went to call upon a young man named Hale living on the south side of Eighteenth street, between Brooklyn and Euclid streets in Kansas City. Wilson hitched his horse to a telephone post near the curb and went into the Hale home. Shortly thereafter a colored man, driving a one-horse delivery wagon and going east at a fast gait, struck the hind wheel of the Wilson buggy, turning it over and causing the horse to fall on the ground. While the colored man was trying to free his wagon from the buggy, Wilson came

out and getting upon the delivery wagon commenced beating the driver. The collision, followed by the assault, soon attracted a number of people to the scene. After he had beaten the colored driver almost into insensibility he left him in the seat and got off the wagon and gave attention to his horse and buggy. The colored driver, after Wilson had left him, fell from his seat, upon the shafts, and was assisted to the ground. Bystanders then placed him back in his seat on the wagon and his horse was led slowly east toward Brooklyn street. When the delivery wagon had moved a distance of from ten to twenty feet from where it had struck the buggy, Wilson, and Frank Smith, the deceased, walked in the direction of the delivery wagon, the former intending to secure the number of the delivery wagon. They had advanced but a few feet when several shots were heard. These shots were evidently intended for Wilson, but struck deceased and mortally wounded him.

The defendant, a colored man, thirty-nine years of age, a contractor and builder, owned a building occupied as flats adjoining the Hale home where Wilson was visiting. The defendant did not reside in his said property, but at the time of the difficulty was there attending to business in connection therewith. Witnesses for the State testified that as Wilson and Smith were walking toward the delivery wagon the defendant was seen hurrying from his property to the street and, advancing in the direction of Wilson and Smith, with a pistol in his hand, commenced shooting at them. That after the shots were fired the defendant escaped from the scene and the officers were unable to find him.

There was much testimony on behalf of the defendant tending to show that when the defendant came from his house into the crowd he went to the delivery wagon and assisted the driver back into the seat, and that at the time the shots were fired he was still at

the wagon giving his attention to the driver. The defendant was a witness in his own behalf and testified positively that he did not have a pistol when he went into the street and did not fire the shots. His testimony was corroborated by others who were with him at the time. He explained his flight by saying that he was informed immediately after the shooting that a mob was looking for him and that it would be best that he should get out of reach until the excitement subsided. He also testified that he had business at Salina, Kansas, and that he concluded to attend to that while absent from Kansas City; that as soon as he heard he could return with safety, he sent word to the officers and voluntarily surrendered to them.

Instructions were given to the jury by the court of its own motion, authorizing a conviction of murder in the first or second degree, according as the jury might find from the evidence; also upon the presumption of innocence, reasonable doubt, motive, flight, and such other instructions as are usually given in a criminal case. No instruction was asked by the defendant.

After the court had prepared its instructions and before they were read to the jury, the following colloquy between the court and counsel for the defendant occurred, as shown by the record:

"MR. HANDY: The defendant objects and excepts to each and every instruction given in this case and for the further reason that the court has failed to instruct on all the law in this case.

"THE COURT: Suggest to the court—

"MR. HANDY (interrupting): I object and except to each and every instruction given on behalf of the State, and to each and every instruction given in this case. That is one reason, and for a further reason, that the court has failed to instruct on all the law in the case.

"THE COURT: The court asks Mr. Handy, counsel for defendant, to advise the court in what respect the court has failed to instruct on all the law in the case.

"MR. HANDY: Defendant, through his counsel, refuses to advise the court wherein he has failed to instruct on all the law in this case.

"THE COURT: Have you any instructions to offer?

"MR. HANDY: None.

"Thereupon the court read said instructions to the jury as above given."

The cause was submitted in this court without oral argument and without a brief for appellant. Fifteen days after submission, on leave granted by the court, appellant filed a brief in which but two errors are assigned, namely:

"The court erred in admitting irrelevant, incompetent and immaterial testimony on behalf of the State.

"The court erred in failing to instruct the jury on all of the law governing the case."

Under the first assignment, notwithstanding the fact that no ruling of the court has been called to our attention in which alleged incompetent testimony was admitted, we have read with care the entire record and have concluded that the rulings of the court were in accordance with the law and that this complaint is without merit.

In support of the second error assigned it is now claimed for the first time that the defendant was entitled to an instruction on the defense of alibi.

It was shown by the testimony, including that of the defendant himself, that at the time the shots were fired the defendant was there in the crowd that had assembled by reason of the collision and the altercation and that he was not to exceed twenty or thirty feet from the deceased. Under this evidence it is too

plain for argument that as the defendant was where he could have committed the crime there was no question of alibi in the case. This was undoubtedly the view taken by the court, and also by counsel for the defendant, as shown by the foregoing excerpt from the record concerning the instructions.

But even if an instruction on that question of law had been proper under the evidence, yet to entitle appellant to a reversal of the judgment upon that ground, he should have specifically called the attention of the court to the failure to give such an instruction, in the motion for a new trial, and as that was not done it is too late to raise the question for the first time in this court.

The case was well tried, and although there was the testimony of a number of witnesses which, if believed, would have required a verdict of not guilty, on the other hand there were witnesses who testified that they saw the defendant come from his house, with a pistol in his hand, and saw him fire the fatal shot. It was for the jury to pass upon the credibility of these witnesses and to determine the facts. There was evidence to support their verdict and in such case it is not the province of this court to disturb it. A diligent examination of the record has failed to disclose error and accordingly the judgment is affirmed.

*Brown, P. J.,* and *Ferriss, J.,* concur.