THE STATE v. FRANK STANDIFER, Appellant.

Division Two, December 20, 1926.

**1. APPELLATE PRACTICE: Insufficient Evidence.** Although the evidence for the State and the evidence for defendant may be in direct conflict, the verdict of guilty cannot be disturbed on the ground of insufficient evidence, if the evidence for the State is positive, substantial and points unquestionably to defendant's guilt as charged.

**2. INSTRUCTIONS: Motion for New Trial: General Assignment: Act of 1925.** In the trial for an offense committed since July 9, 1925, when Section 4079 of the Act of 1925, Laws 1925, page 198, became effective, and which declares that the motion for a new trial "must set forth in detail and with particularity in separate numbered paragraphs, the specific grounds or causes therefor," and empowered the court, for good cause shown, "to extend the time for filing such motion for a period of ten days from the date of the return of the verdict," a motion for a new trial whose only paragraph assigning error in the giving of the instructions was that "the court erred in giving Instructions Nos. 1, 2, 3, 4, 5 and 6, on the part of the State," did not meet the requirements of said amended Section 4079, and an assignment in appellant's brief that "the court erred in giving Instruction 2" cannot be considered. The manifest legislative purpose of the amendment was to call the attention of the trial court to particular errors to be relied upon when the case reaches the appellate court, and its language is too specific and clear to permit any other construction.

316 Mo.—4.

3. **MOTION FOR NEW TRIAL: Assignment of Error: Act of 1925.** Since the amendment to Section 4079 made by the Act of 1925, Laws 1925, page 198, all assignments of error in the motion for a new trial in a criminal case must be made in detail and with particularity and specifically, and if not so made they cannot be considered in the appellate court. Whatever error the appellant wishes the appellate court to consider he must first specifically bring to the attention of the trial court by his motion for a new trial.

Corpus Juris-Cyc. References: **Criminal Law,** 17 C. J., Section 3475, p. 181, n. 38; Section 3476, p. 182, n. 41; Section 3485, p. 184, n. 77; p. 185, n. 88. **Larceny,** 36 C. J., Section 485, p. 906, n. 59.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* Judge.

AFFIRMED.

*Don C. Carter* for appellant.

"The court erred in giving Instruction 2, on the part of the State." State v. Whalen, 294 Mo. 139; State v. Bennett, 297 Mo. 190; State v. Tracy, 294 Mo. 372; State v. Wagner, 252 S. W. 695; State v. Sexton, 262 S. W. 63.

*North T. Gentry,* Attorney-General, and *Geo. W. Crowder,* Assistant Attorney-General, for respondent.

The giving of Instruction 2, which declares that recent exclusive possession of stolen property raises a presumption that the possessor is the thief and puts the burden upon him to repel such presumption, has been condemned by this court as reversible error ever since the Swarens case, decided in 1922. State v. Swarens, 294 Mo. 139.

BLAIR, J.—The information charged appellant with the felony of stealing chickens in the nighttime, in violation of Section 3314, Revised Statutes 1919. The jury returned a verdict of guilty as charged and assessed the punishment at a fine of two hundred dollars. After unsuccessfully moving for a new trial, appellant was sentenced on the verdict and was granted an appeal.

The statement of facts made in appellant's brief is sufficient for the purpose of this opinion. We quote it as follows:

"The evidence on the part of the State tended to show that Fred Gibson and wife live about a mile and one-half northwest of Centralia, Missouri, and that on the 20th day of June, 1925, they drove into Centralia, between eight and nine o'clock that night, to buy their groceries for the coming week, this being Saturday night; that when they returned home that night, between eleven and twelve o'clock, they discovered that some of their chickens had been taken

from their chicken house on the premises; the next morning, Sunday, they drove into Centralia and went around to the poultry store or house of Tom Gorman, and there found certain chickens which they identified as being the chickens taken from their chicken house the night before; the men in charge of the poultry house on that Saturday night testified that the defendant had sold these chickens to them on the night in question, sometime between eight and nine o'clock. There was also considerable evidence offered as to the identification of the chickens by the Gibsons; the poultryman, Gorman, gave the chickens to Gibson and wife, who took them home, and there was evidence as to how the chickens acted when placed in the chicken yard of Gibson. There was also evidence offered on the part of the State that a Ford car, shown to be like one the defendant owned and drove, had been standing out in the public road near Gibson's residence, about the time the chickens were alleged to have been taken.

"The evidence on the part of the defendant tended to show that defendant was a farmer, living several miles southeast of Centralia, on a 480-acre farm belonging to his father; that his family consisted of a wife and four children, and that he had at the time of the trial over a thousand chickens—was considered a chicken-raiser on a big scale in that vicinity; that on the day in question he took his wife, a Mrs. Grimsley, a Miss Thompson, and his four children to Centralia, in his Ford car, leaving home about 6:30 or 6:45; that when he got to Centralia he let his wife, Miss Thompson and the children out, but took Mrs. Grimsley on out to her grandmother's (Mrs. A. L. Hulen), who lived about one-half of a quarter of a mile from the residence of Gibson, the prosecuting witness; that he came back home, passing the witness Gibson and wife on the road, as they (Gibsons) were on their way to Centralia, and got some chickens out of some coops that his wife had put up to be sold, put them in some sacks and brought them in to Centralia and sold them at Gorman's poultry house; that he then went on out to the show grounds to the show, after first paying up some bills at the stores; defendant denied ever being on Gibson's place and of course denied any connection whatsoever with the theft of Gibson's chickens; defendant was corroborated *in toto* by a number of witnesses who saw him on the road when he went after the chickens at his home, and who saw him while at home, and also saw him on the road from home to town—in short, defendant proved a perfect alibi. A great number of witnesses testified as to the defendant's reputation for truth and veracity and good citizenship—in fact the State did not controvert this fact whatsoever. The State did not offer any evidence in rebuttal."

If the chickens sold to Gorman were the chickens stolen from Gibson, appellant had possession of the stolen chickens immediately after they were stolen. If the jury found that the chickens sold by

appellant were the stolen chickens, that finding necessarily was a finding that appellant had not satisfactorily accounted for his possession of the recently stolen chickens. Therefore, the identity of the chickens was really the vital question in the case. Their identity as the stolen chickens having once been established, all other questions of fact in the case were easily resolved. Not only did Gibson and his wife positively identify two of the chickens—one because it was a pet and the other because of a peculiar way in which it carried its head, due to an injury—but there was evidence showing that when the chickens were returned to the Gibson premises they gave every indication of being at home and were treated as members of the Gibson chicken family by the remainder of the flock. There was positive testimony that the chickens identified at and taken away from Gorman's poultry house by Gibson were the same chickens purchased by Gorman from appellant on the very night that Gibson's chickens were stolen.

There was, therefore, substantial evidence tending to show the guilt of appellant. The jury believed the evidence offered by the State, rather than the evidence offered by appellant. Its verdict is well supported by the evidence and cannot be disturbed, because of alleged insufficiency of the evidence.

Appellant has made but one assignment of error in his brief and that is that the trial court erred in giving Instruction 2. Counsel asserts that many other errors were committed, but contends that the giving of Instruction 2 was such manifest error that it is useless to bother this court with the consideration of other alleged errors.

This offense is alleged to have been committed and the trial occurred since July 9, 1925, when Laws of 1925, page 198, Section 4079, became effective. Said Section 4079 reads as follows:

"The motion for a new trial shall be in writing and must set forth in detail and with particularity in separate numbered paragraphs, the specific grounds or causes therefor. Such motion shall be filed before judgment and within four days after the return of the verdict, if the term shall so long continue; and if not, then before the end of the term; provided, that the court shall have power in any case for good cause shown to extend the time for filing such motion for a period not exceeding ten days from the date of the return of the verdict."

Examining the motion for new trial, we find that the only paragraph therein which could possibly be regarded as assigning error in the giving of said Instruction 2 is paragraph 6 of the motion, which reads: "Because the court erred in giving Instructions Nos. 1, 2, 3, 4, 5 and 6, on the part of the State." These were all of the instructions given by the court which were not requested by the appellant.

We also find that exceptions to the giving of said Instructions 1 to 6, inclusive, were duly saved.

There can be no question that assignment 6 in the motion for new trial was a perfectly good assignment under Section 4079, as it is found in Revised Statutes for 1919. But such assignment does not meet the requirements of Laws of 1925, page 198, section 4079. The only specification concerning the contents of the motion for new trial found in old Section 4079 was that it must set forth the grounds or causes therefor. New Section 4079 requires much more. The motion must set forth "in detail and with particularity in separate numbered paragraphs, the specific grounds or causes therefor."

The Legislature must have had some purpose in mind in thus changing the requirements of motions for new trial in criminal cases. It is very evident that it intended that there should be no longer any masked batteries in such motions. It was manifestly intended that appellant in a criminal case should thereafter be required in deed and in truth to call the attention of the trial court to particular errors to be relied upon when the case reached the appellate court. How anxious the Legislature was not to be misunderstood! It used three words which, in the sense employed, are practically synonymous, to-wit, "in detail," "with particularity" and "specific."

If any possible doubt could be entertained of the intention of the Legislature to require appellants in criminal cases to present to trial courts as assignments of error in the motion for new trial the very grounds relied upon for reversal in the appellate court, such doubt is dispelled when it is noted that, under new Section 4079, the trial court, for good cause shown, may extend the time for filing the motion for new trial for a period not exceeding ten days from the date of the verdict. There was no reason for extending the time for filing motions of the "shot gun" variety usually filed before new Section 4079 was enacted. Except where some investigation had to be made and proof gathered in support of a ground for new trial, motions for new trials containing the general and all-inclusive assignments of error with which lawyers and courts are familiar could be dictated in fifteen minutes from an inspection of the files by any good lawyer, even though he had not participated in the trial. If proof in support of assignments was necessary the court could and did grant time for affidavits.

It has been the practice of trial lawyers to charge the trial court with every error it might possibly commit during the course of a trial, and thus to conceal the real point or points relied upon in the generality of the charges of error made. Then at his leisure appellant's counsel would print his record and go over it carefully and pick out one or two, or possibly a half dozen, assignments of error for the consideration of the appellate court and abandon all of the

other assignments of error made in the motion for new trial. Counsel would further take advantage of the liberality of the statutes and the rules of this court toward appeals in criminal cases by waiting until the last moment and until the Attorney-General had briefed the assignments made in his "shot gun" motion for new trial before filing his brief here. Thus he not only attacked the trial court from ambush in the motion for new trial, but compelled the Attorney-General and his hard working assistants to be prepared to meet attacks from any point in the possible field of battle where the masked batteries of the enemy might be hidden.

By new Section 4079 the Legislature has served notice upon the bar of the State that such practices are definitely at an end. Since said new Section 4079 became effective, it has become the duty of counsel for appealing defendants in criminal cases to be as fair with the trial court as he expects to be with the appellate court. The correlative duty on the part of appellate courts is to deny appellants in criminal cases the right of appellate review upon any point not specifically, in detail and with particularity, called to the attention of the trial court. The bar should take notice and the trial bench may rest assured that this court is prepared to and will enforce the manifest legislative intent in all appeals in criminal cases where the motions for new trial were filed after new Section 4079 went into effect.

In the case at bar appellant's assignment 6 in his motion for new trial did not set forth in detail and with particularity the specific grounds relied upon for a new trial. To merit consideration here and in order to comply with new Section 4079, said assignment 6 in the motion for new trial should have specifically called the attention of the trial court to Instruction 2 and should have pointed out in detail and with particularity the respect in which it was erroneous. If this ruling be deemed revolutionary, the obvious answer is that the change made by the Legislature is revolutionary.

We hold that the only assignment made in appellant's brief in this court is not here for consideration, because not properly called to the attention of the trial court in the motion for new trial in compliance with the Laws of 1925, page 198, section 4079.

Appellant suggests that "there are a great many errors appearing in the record in this case, in the admission of evidence, the refusing of evidence, and also in the manner and conduct of the prosecuting attorney in the trial of the case, including his closing argument to the jury." We have carefully examined the assignments covering such points in the motion for new trial and find that they are just as general and just as far from compliance with new Section 4079 as we have held assignment 6 in said motion to be. Such assignments could not be considered, even if appellant had urged them in his

brief, because the motion for new trial furnishes no antecedent basis for their consideration by this court.

Finding the evidence sufficient to support the verdict and no assignment of error urged here being properly for consideration and finding no error in the record proper, the judgment of the trial court must be and is affirmed. All concur.