THE STATE v. CLARENCE EATON and BIRCHIE NORMAN, Appellants.
292 S. W. 70.

Division Two, March 14, 1927.

**1. BILL OF EXCEPTIONS: Absence of Clerk's Certificate: Correction.** The failure of the clerk of the trial court to attach a certificate to the purported bill of exception may be corrected, before the case is argued and submitted, by attaching, upon leave, of his certificate showing the genuineness of the bill and its approval, signing and filing in the trial court.

**2. HOMICIDE: Deliberation.**  Where the jury did not find defendants guilty of murder in the first degree, it is immaterial whether the evidence showed deliberation.

**3. ———: Self-Defense or Murder: Authorized Finding.**  Where the evidence for the State is that deceased and his son had been halted a safe distance from defendant and were making no attempt to advance upon him at the time he fired the fatal shot, and there is no evidence that defendant's passion had been aroused by previous combat or mistreatment, and his testimony is that he did not engage in the affair until deceased advanced upon him with a drawn knife, the act of defendant was either murder or self-defense, and the jury are justified in finding him guilty of murder in the second degree.

**4. ———: Conspiracy: Accessory.**  If one defendant did not aid, abet, counsel or assist the other in shooting deceased, and was not guilty of any crime at the time and place of the homicide, his mere presence there is not enough to convict him of murder in the second degree.  The State must show common design or concert of action and participation by him in the homicide committed by the other, or else a verdict of guilty cannot stand.

**5. EVIDENCE: General Assignments.**  General assignments in the motion for a new trial that the court erred in its rulings admitting or rejecting evidence do not constitute proper assignments of error under Section 4079, Laws 1925, page 198.

**6. EVIDENCE: Res Gestae.** All incidents which tend to characterize or explain the homicide are admissible as part of the res gestae, even though not actually contemporaneous with the act of firing the fatal shot.

**7. ———: Escape: No Objection.** No objection being made to the admission of evidence tending to show attempted flight on the part of appellant having been made at the trial, any supposed error committed in admitting it is not for consideration in the appellate court.

**8. CONSTITUTIONAL QUESTION: Jurisdiction.** The appellate jurisdiction of this court does not depend on the presence in the record of a constitutional question properly and timely raised.

**9. ———: Juries: Special Law.** Because Section 4017, Laws 1925, page 196, provides that in cities having one hundred thousand inhabitants or more, defendants in capital cases may have more peremptory challenges than defendants tried in other counties of the State, it is not unconstitutional as a special law.

**10. ———: ———: Ex Post Facto Law: Procedure.** The Act of 1925, Laws 1925, page 196, providing for six peremptory challenges by the State and twelve by the defendants in capital cases is not ex post facto as to offenses committed before the act went into effect. The number of challenges to which a defendant on trial is entitled is purely procedural matter, and does not constitute a substantial right.

**11. INSTRUCTION: All Law of Case.** The motion for a new trial must specify upon what point the court failed to instruct the jury. An assignment in the motion that the court "erred in not instructing the jury upon all the law in the case" is too general in view of Section 4079, Laws 1925, page 198.

**12. ASSIGNMENTS: Error in Giving Particular Instruction.** An assignment in the brief that the trial court erred in giving instruction numbered 9, where the only complaint in the motion for a new trial that can refer to said instruction is that the court erred because "the law affecting and adjudging defendant's case has not been clearly and correctly set forth in the instructions given to the jury," cannot be considered. And an assignment in the motion for a new trial that "the court erred in refusing instructions numbered one and two offered by defendant" saves nothing for review. The motion for new trial must set forth with particularity and in detail the peculiar ground of error relied upon.

**13. ARGUMENT TO JURY: No Objection.** Where no objection to the argument of the prosecuting attorney to the jury was made, the remarks cannot be held to have been error.

**14. ———: Witness Subpoenaed by Defense.** Counsel for the State in his argument to the jury stated that a certain person, who had been with defendants an hour or two before the homicide and was near by when it was committed, had been subpoenaed by the defense. The objection was: "Object to that; I want him to stay in the record." Upon the statement by counsel for the State that he introduced the subpoena in evidence, the court said: "Well, proceed." There is no showing in the record that the subpoena introduced by the State did not show that the witness had been subpoenaed by appellants. Held, that it cannot be ruled that the court erred in permitting the argument to stand.

---

Corpus Juris-Cyc. References: Constitutional Law, 12 C. J., Section 811, p. 1104, n. 71. Criminal Law, 16 C. J., Section 2240, p. 896, n. 85; 17 C. J., Section 3331, p. 56, n. 16; Section 3351, p. 90, n. 75; p. 91, n. 76; Section 3422, p. 138, n. 46 New; Section 3449, p. 164, n. 16. Homicide, 30 C. J., Section 423, p. 193, n. 53; Section 427, p. 199, n. 25; Section 560, p. 314, n. 54, 55. Juries, 35 C. J., Section 470, p. 411, n. 31. Statutes, 36 Cyc., p. 1005, n. 33.

Appeal from Henry Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED as to Eaton; REVERSED AND REMANDED as to Norman.

*Haysler A. Pogue* and *Henry F. Poage* for appellants.

(1)   The evidence does not warrant the verdict. From the evidence it appears that deceased and his son were the aggressors, throughout. The evidence does not substantially uphold a conviction of either of the defendants. The verdict is against the evidence and against the law under the evidence. State v. Goode, 271 Mo. 43; State v. Partlow, 90 Mo. 608; State v. Gordon, 191 Mo. 114.   (2)   It was error to permit the introduction of evidence by the State as to disturbances and cursing, with which defendants were not connected and which was not related to the offense with which they were charged. State v. Webb, 254 Mo. 434.   (3)   Instruction 9 given by the court practically deprived defendants of the right of self-defense, inasmuch as it limited that right, by the phrase, "and did not himself voluntarily enter into the difficulty," which was erroneous in view of the fact that defendant had withdrawn from the affray and was fleeing. State v. Goode, 271 Mo. 43; State v. Partlow, 90 Mo. 608; State v. Gordon, 191 Mo. 130.   (4)   The trial court did not instruct upon all of the law in the case when it was his duty so to do. State v. Branstetter, 65 Mo. 149; State v. Rufus, 149 No. 406.   (5)   The trial court erred in refusing defendants' instructions in the nature of a demurrer to the evidence, requested both at the close of the State's case and at the conclusion of the testimony. The State's case, as shown by its testimony, was predicated upon the theory that Norman aided and abetted Eaton, when there is no evidence that Norman even knew or had any reason to believe that Eaton was about to fire a shot at John Sorrel, and for the further reason that there is no evidence that Eaton knew of this affray until approached by the two Sorrels, who were certainly the aggressors, in a threatening manner and in such circumstances as to frighten Eaton and place him in fear of his own safety from bodily harm. State v. Goode, 271 Mo. 43; State v. Partlow, 90 Mo. 608; State v. Gordon, 191 Mo. 114.   (6)   Instructions 1 and 2 asked by the defendants and refused should have been given. The defendants were entitled to the instructions placing the burden of proof on the State and cautioning the jury against conviction based upon suspicion and advising them to bear the presumption of innocence until overcome by evidence which shows guilt beyond a reasonable doubt, as asked by Instruction 1. They were entitled to the Instruction 2 which instructs the jury that the defendants are not required to prove themselves innocent, and that the law requires that the State prove the defendants guilty, to the satisfaction of the jury

beyond a reasonable doubt. State v. Douglas, 258 Mo. 281; State v. Gullett, 121 Mo. 447; State v. Maxley, 102 Mo. 374; State v. Conway, 241 Mo. 271. (7) It was error to permit evidence in attempt to show flight of one of the defendants, when defendant was arrested near his home, one week after offense. State v. Dogan, 252 S. W. 387. (8) Section 4017, Laws 1925, is in violation of the Constitution of Missouri, and of the United States. It extends special privileges, class distinction, and renders the criminal code and procedure un-uniform in the State. It deprives defendants in certain localities of "life and liberty without due process of law." Sec. 1, art. 14, arts. 5 and 6, Amendments, U. S. Constitution; Secs. 28, 30, art. 2, Mo. Constitution; Sec. 2, art. 4, U. S. Constitution. (a) The alleged offense was committed on June 4, 1925. Preliminary hearing was had on June 23, 1925. Information was filed July 1, 1925, all prior to taking effect of Sec. 4017, Laws 1925. The court erred in applying said law to the trial of this case. Such application was *ex post facto*. Sec. 10, art. 1, U. S. Constitution; Sec. 15, art. 2, Mo. Constitution; Sec. 1, art. 14, Amendments, U. S. Constitution.

*North T. Gentry*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

(1) There is no bill of exceptions before this court. What seems to be the original bill of exceptions is on file. It is signed by the judge of the circuit court. There is no certificate of the circuit clerk as to its genuineness or correctness. It, therefore, cannot be considered by this court. The law does not authorize the circuit clerk to send to the appellate court the original bill of exceptions. State v. White, 315 Mo. 1276. (2) The record proper shows (a) that the defendants were arraigned and entered a plea of not guilty; (b) that a jury was properly empaneled and sworn to try the case; (c) that after hearing the evidence, the jury returned into court the verdict of guilty; (d) that allocution was had and judgment rendered by the court in accordance with the verdict of the jury and the defendants sentenced to the penitentiary. The information is in an approved form and is sufficient. State v. Young, 286 S. W. 29. The verdict of the jury is in proper form. State v. Young, 286 S. W. 29. (3) There is no error in the record proper. There is no bill of exceptions before the court. The evidence fully warrants the verdict of the jury.

BLAIR, J.—Appellants were convicted of murder in the second degree. The homicide occurred in Benton County. The case was tried in Henry County after a change of venue. The jury assessed the punishment of appellant Eaton at fifteen years in the peniten-

tiary. Appellant Norman's punishment was fixed at ten years in the same institution. They were duly sentenced and both have appealed to this court.

The scene of the tragedy was a public highway in Benton County, near the New Home Baptist Church. The victim was one John R. Sorrell, to whom we will generally refer as the deceased. The time was Thursday, June 4, 1925, between ten and eleven o'clock at night. The moon was shining brightly at the time. The occasion was a meeting to practice songs for an approaching children's day service of the Sunday School. Deceased was the song leader.

Eaton and Norman and one Brashers were attracted to the meeting. If they were inside the church at all, it was only for a short time or times. A disturbance arose outside, caused by the exhaust of an automobile driven around the church two or three times and by some loud swearing. Deceased and one Mowell left the practice and stepped outside to quiet the disturbance, and found Eaton, Norman and Brashers outside the church. Deceased talked with them and re-entered the church.

After the practice was over Norman and Brashers were still at the church. When deceased came out Norman said something to him to the effect that he could not prove that he (Norman) swore. The matter apparently was dropped after a few words. At that time Eaton was down the road a few rods, fixing a tire on his automobile. Deceased had started to untie his horse, and the son of deceased, Eddie Sorrell, was cranking his automobile. The State's evidence tended to show that Eddie then overheard some remark made by Norman to the effect that deceased was a liar. Eddie called Norman to account and asked him if he had called his father a liar. Norman said that, if his father said he swore, he was a liar.

Thereupon Eddie struck Norman with his fist and they engaged in an ordinary fight. Suddenly Norman started to run, yelling to Brashers to look out, that Eddie had a knife. Eddie admitted that he drew his knife, but claimed he did it only after Norman had drawn his own knife and he felt it cut him or cut his clothes. Norman denied that he had drawn any knife at that time. Anyway, Norman ran down the road to the spot where Eaton was working on his automobile. Eddie Sorrell claimed that he put his knife away while he was pursuing Norman. Upon learning of the fight and seeing his son pursuing Norman, deceased joined in the chase and called to his son to "stay with him, Eddie."

The sharpest contradiction in the testimony appears in the occurrences after deceased and his son and Norman arrived at the point where Eaton was working on his automobile. The story, as developed by the State's witnesses, is that Norman ran to the automobile, grabbed a pistol from the automobile, and pointed it at Eddie and

commanded him to stop, and threw rocks at him. Eaton then drew his pistol also and told Eddie to put up his hands. Eddie complied. Neither deceased nor Eddie had any weapon in his hands at that time. Norman told deceased to put up his hands, but deceased said he would not put up his hands for any man. Thereupon, and while deceased was making no attempt to approach or attack either Eaton or Norman, Eaton said to deceased, "You won't put up your hands?" and fired his pistol at deceased. The bullet entered deceased's neck and apparently penetrated or, at least, entered the vertebrae. He was taken to the Katy hospital in Sedalia, Pettis County, and there died about a week later from the effects of such gunshot wound.

The version of Norman was that he never had any knife when he was fighting with Eddie Sorrell at the church. He felt Eddie's knife cut him and he broke away from him. He ran to the automobile and grabbed a knife, not a pistol, and flourished it to protect himself against Eddie, who still had his knife out. While he was thus standing Eddie off, he heard the shot fired by Eaton, which took as its toll the life of deceased. Norman denied having a pistol in his hand at any time. However, the great weight of the testimony was against him on this point. Norman was corroborated as to receiving knife wounds at the hands of Eddie Sorrell by a physician witness who dressed the wounds a couple of days after the fight.

Eaton's story was that he was working on his automobile when Norman suddenly appeared pursued by Eddie Sorrell and the deceased. He demanded to know the cause of the trouble. Deceased had his knife in his hands and was approaching him and threatening him with his knife. Eaton grabbed his pistol and told deceased to stop and to put up his hands. Deceased refused to do so and continued to come on toward Eaton, and he fired one shot to protect his own life. The decided weight of the testimony is to the effect that deceased had no knife or other weapon in his hands at that time. No weapon was found about or upon his body.

The only witnesses for the defense were the appellants themselves. The record, containing the testimony of a number of disinterested eye witnesses, strongly tends to show that, although Norman doubtless fled from Eddie Sorrell to avoid injury and was pursued by Eddie and the deceased, yet, at the time of the shooting, neither Eddie nor deceased displayed any weapon and that both Eaton and Norman had secured pistols and were not in serious danger of further aggression at the hands of the Sorrells, father and son, or either of them.

One or two witnesses testified that Eaton called to Norman after he fired the shot and said, "I got him." They cranked the automobile and left the vicinity. There is also some testimony that several shots were fired by appellants as they drove away. Their automobile was afterwards found abandoned by the roadside. Norman gave

himself up and submitted himself for medical treatment in a day or two. Eaton was arrested about a week afterwards within a few miles of the scene of the shooting. He stated at the time that he was about to leave the county.

The learned Attorney-General contended in his brief that there is nothing before the court except the record proper, because the purported bill of exceptions was not certified by the clerk of the circuit court to be genuine. Before the case was argued and submitted,

**Bill of Exceptions.** appellants filed their motion to correct the record by filing and affixing the certificate of the clerk of the circuit court. To that motion was attached the certificate of the Circuit Clerk of Henry County, showing the genuineness of the bill of exceptions on file in this court and certifying to the entry of record showing the signing, approval and filing of said bill of exceptions in the trial court and making the same part of the record in the case. We think appellants' motion should be and it is sustained. Thus the defect pointed out by the Attorney-General has been corrected.

One of the assignments of error is that the evidence is insufficient to authorize conviction of either of the appellants and that the trial court should have directed a verdict of acquittal. The case was submitted to the jury under instructions upon murder

**Sufficiency of Evidence.** in the first and second degrees, manslaughter and self-defense. An instruction upon common design on the part of appellants was also given. The theory of the instructions was that Eaton fired the fatal shot and that Norman was present aiding, abetting, etc., in the homicide. As the jury did not find appellants guilty of murder in the first degree, we need not concern ourselves to inquire if there is any evidence tending to show deliberation.

The State's theory of what occurred at Eaton's automobile is probably more clearly developed in the testimony of Eddie Sorrell than in the testimony of any other witness. We quote his testimony as it appears in the record:

"I stepped back a few steps north to where my car was setting; and I heard Norman say to Brashers: That man told a damned lie, I don't swear; I walked up where he was standing and said: Did you say my father lied? and he said, Yes: I struck at him, and hit him a glancing blow, and then we fought just a few minutes—or for a short time, and then clinched, and, in the break away, I felt him cut my shirt and my arm with something sharp—I didn't know what it was, at the time; and when he did that, I jumped back and pulled out my knife and opened it, and when I did this, he run around Brashers and said: Look out, Slim, he's got a knife, and then he

run off a little southwest into the road, and I run after him; and just as I started to run, papa came out and followed me on up the road; and when I entered the road I stumbled and straightened up and put my knife in my pocket and my father caught up with me and asked me if I had been hurt or cut with a knife, I said, I don't think so; I wasn't sure yet, because I didn't know whether I was hurt or not; then I walked on up to the car, Father following on right close behind; and Norman, by this time, was a little ways ahead of me and the car was about—something like thirty steps from where we entered the road; I walked practically up to the car and stopped in about ten feet of it; Norman just run on around the car and got hold of a gun and stepped out in front of the car, and told us both to stop; we did—we stopped; Eaton was standing out at the left front wheel of the car—seemed to be working with the tire there; and Norman told us to stop; and my father and I told him to go ahead and shoot, or quit; and I told him he didn't have nerve enough to shoot; and he reached down and picked up a rock and threw at me, but I dodged the rock, and still stood there; and about that time a car drove up to the north of this other car and almost stopped, and all three of us—Wm. Harkins and Harrison and Ora Wolf in the car—and Norman raised his gun at them and told them to go on up the road—we wasn't in the trail, but to this side; there was one or two horses passed on the south side of the car, I didn't notice who were riding the horses; just as the car passed, Eaton just pulled the tire off the car wheel; and he pulled a gun out of his pocket and walked out towards me and told me to put up my hands; I put my hands up, and he told me to put them up higher; I told him I had them up; I had them about half way up; I says, All right, up that way, then; I backed two or three steps backward; he told me to stop; I stopped then, and he reached down and picked up a rock and threw it, I at first thought at me; I guess must have been at me or somebody; I didn't know; then he reached down and picked up another rock and threw it, it went by me, I didn't see where it went to; then he walked up towards me and struck at me with his fist; I just jumped back and dodged his blow; and, in the meantime Norman had turned to Papa, and said: Put up your hands, or I will blow your damned head off; Papa says, No, I won't put up my hands; when Eaton heard papa say that, he whirled towards him and says: You say you won't put up your hands? Papa says: No, I won't put up my hands; then Eaton shot him and he dropped unconscious. Norman and Eaton whirled and run towards the car. He said, I got the son of a bitch, let's get out of here. He said something else; I didn't hear what he said. I run to my father as soon as he fell, and saw the bullet had penetrated his neck just below the chin. Norman and Eaton cranked the car and drove on down past

me towards Fristo, southeast of New Home Church; and the people called for the doctor at Mr. Smith's home, about two hundred yards from where he shot papa, and we stayed there with my father until the doctor came, and then he was carried on up to the home of Curt Smith, there about two hundred yards away.''

According to the story told by Eddie Sorrell (and it is well supported by other witnesses for the State), deceased and Eddie had been halted at a safe distance and were making no attempt to advance upon either of the appellants at the time the fatal shot was fired by Eaton. Deceased and Eddie were displaying no weapons at the time. We think it was for the jury to say whether Eaton had reasonable cause to believe and did believe his life or limb was endangered at the hands of either deceased or his son at the time he fired the fatal shot.

**Murder in Second Degree.**

Eaton had not been engaged in the affray until confronted by deceased and his drawn knife, as he contended. There is no evidence that his passion had been aroused by previous combat with or mistreatment by deceased and his son or either of them. His act in shooting deceased was self-defense or it was murder. The jury was authorized to find that Eaton intentionally used a deadly weapon upon a vital part of the body of deceased. It was authorized to find that the shot was not fired in self-defense or in defense of Norman. It was therefore fully authorized to find Eaton guilty of murder in the second degree. [State v. Young, 119 Mo. l. c. 524; State v. Minor, 193 Mo. l. c. 608; State v. Kyles, 247 Mo. l. c. 647; State v. Snow, 293 Mo. 143.]

The jury might have found that Eaton fired the shot in self-defense, but manifestly it did not believe that he thought his life was endangered at the time. In finding that the shot was not so fired, the jury had the right to believe that the shot was fired with malice and with premeditation. We think the evidence was sufficient to support the finding of the jury that appellant Eaton was guilty of murder in the second degree.

But we find the situation regarding appellant Norman to be quite different. We fail to find in the record any evidence of common design or concert of action between Eaton and Norman which would make Norman responsible for the act of Eaton in firing the fatal shot. Norman was not the aggressor in the fight at the church. His language used there doubtless caused Eddie Sorrell to assault him. The evidence that Norman ever drew a knife on Eddie is rather unsatisfactory. But, even if he did, it constitutes no fact or circumstance tending to prove that he had any thought or understanding that Eaton was to shoot the deceased. Norman's flight from the church to Eaton's automobile and his stand at the automobile, whether he had a pistol, as the State's witnesses said, or only

**Accessory.**

a knife, as·Norman himself said, were manifestly purely defensive actions.

· It does not appear that Norman called upon Eaton for assistance. He had not even demanded that deceased and Eddie should put up their hands until Eaton commanded Eddie to do this and then Norman turned to deceased and said to him, ''Put up your hands, or I will blow your damned head off.'' When the deceased refused to put up his hands, it was not Norman, but Eaton, who took the matter in hand.

The firing of the fatal shot was entirely the act of Eaton, unless Norman aided, abetted, counseled or assisted him in the shooting or ordered or commanded Eaton to do it. Norman was not guilty of any crime, unless it was disturbance of the peace or assault, and that occurred back at the church. His mere presence at the scene of the shooting is not enough. The State must show participation by him in the killing by Eaton. This, we think, the State has not shown under the testimony in the record. The facts shown fall short of proof of common design or concert of action.

Error is assigned to the rulings of the court in the admission and exclusion of evidence. These assignments are too general to constitute proper assignments of error in the motion for new trial, under Laws 1925, page 198, section 4079. [State v. Standifer, 289 S. W. 856.]

**General Assignment.** Specific assignments made are that the court erroneously admitted evidence of swearing and noisy operation of an automobile outside of the church, without identifying either of the appellants as being connected· with the making of such disturbance. The court excluded proof of noise made by the automobile, but permitted the State to show that loud swearing occurred, without requiring proof that the. swearing was done by either of the appellants.

We think it unlikely that the rulings of the court in this respect had any bearing on the verdict, even if said rulings were erroneous. However, we think all incidents which occurred at the church before the shooting, which tended to characterize or explain the main inci-

**Res Gestae.** dent—the homicide—were admissible as part of the *res gestae*, even though not actually contemporaneous with the act of firing the fatal· shot. [State v. Williams, 183 S. W. (Mo.) 308; State v. Baker, 209 Mo. l. c. 450.] We think that proof that swearing occurred, connected with the further fact that the deceased left the church and charged appellants with such swearing, tends to explain the subsequent conduct of deceased and his son and that.of the appellants and was admissible as part of·the *res gestae*.

Error is assigned because the court admitted evidence which tend-

ed to show attempted flight on the part of appellant Eaton.   No
objection was made to the admission of this testimony.
**No Objection.**   The court was not asked to rule on its admissibility
and, of course, cannot now be convicted of error in permitting the
State to make the proof complained of.  For this reason we need
not consider whether the evidence was in fact properly admitted.

Appellants complained that the court only qualified thirty jurors,
while they were entitled to forty qualified jurors.   By Laws 1925,
page 194, Sections 4017 and 4019, Revised Statutes 1919, were re-
pealed, and at page 196, Laws 1925, new Section 4017 was enacted
in lieu of said two old sections.   New Section 4017 provides for
twelve peremptory challenges by defendant and six by
**Challenges.**   the State in capital cases, instead of twenty peremptory
challenges by the defendant and eight by the State, authorized by
Sections 4017 and 4019, Revised Statutes 1919.   Section 4017, Laws
1925, at page 197, also provides that in cities of 100,000 or more popu-
lation, defendants in capital cases, as well as the State, may have
more peremptory challenges in capital cases.   It is contended, *first,*
that the law is unconstitutional because it requires a number of qual-
ified jurors in cities of 100,000 inhabitants or more different from
the number required elsewhere in the State and thus constitutes spe-
cial or class legislation.   And, *second,* that the 1925 Act was *ex post
facto* as to offenses committed before the act went into effect.

It is somewhat questionable whether the constitutional questions
were raised in the manner required by this court, although they were
timely raised.   But since our appellate jurisdiction does not depend
upon the presence in the record of a constitutional question properly
and timely raised, we will assume that the Constitution has been
properly invoked.

The very question first raised here was decided by this court in
State v. Hayes, 88 Mo. 344.  There Section 1902, Revised Statutes
1879, was challenged as unconstitutional because it gave the State
more peremptory challenges in cities having over 100,000 inhabitants
than it gave to the State elsewhere.   Section 1902, Revised Statutes
1879, is identical with Section 4017, Revised Statutes 1919, before
its repeal in 1925.   Judge SHERWOOD said:

"The second point is equally clear.   Section 1902 is valid, and not
obnoxious to any objections on the score of being unconstitutional.
It is not a special law, because it applies to all cities having a popula-
tion of over one hundred thousand inhabitants; applies as well to the
*future* as to the *present,* and in this is plainly distinguishable from
the 'notary act' discussed in State ex rel. Harris v. Hermann, 73
Mo. 340.  Nor does the section in question impinge upon the constitu-
tional rights of the defendant by reason of giving the State the right,
in certain localities, of peremptorily challenging a larger number of

persons than it possesses in other localities. Such power, on the part of the State, does not, under the very terms of the section, diminish a defendant's right to the same number of challenges which he possesses alike in cities or in the country. If the section under discussion had deprived a defendant, when tried in a certain locality, of the usual number of peremptory challenges, a different question might have been presented, one not necessary to be now considered. This subject of the right of the State and of defendant to peremptory challenges, is fully discussed by a learned author and the cases which he cites. [Bishop on Crim. Proc., sec. 940, and cases cited.] The views here expressed are in accord with those authorities." [State v. Hayes, 88 Mo. 1. c. 347, affirmed in Hayes v. Missouri, 120 U. S. 608.] See also Ex parte Loving, 178 Mo. 1. c. 213; State v. Tower, 185 Mo. 1. c. 95.

Every contention made by appellant here is effectually answered by the Hayes case. This contention must, therefore, be disallowed.

The contention that, if Section 4017, Laws 1925, page 197, is applied to cases where the alleged crime was committed before the act took effect, the law violates provisions of our Constitution against *ex post facto* laws, is equally without merit. The number of challenges to which the defendant on trial is entitled is purely a procedural matter and does not constitute a substantial right. In 12 Corpus Juris, 1103, it is said: "Where a law relates to matters of procedure merely, and does not deprive the accused of any substantial protection, it is not *ex post facto*. Thus a law changing qualifications, method of selection, and method of impaneling jurors, a law changing the number of peremptory challenges allowed the accused or the prosecution, . . . is not *ex post facto* as to offenses committed before its passage." See also Ex parte Berthurum, 66 Mo. 545; State v. Johnson, 81 Mo. 60; Hallock v. United States, 107 C. C. A. 487; South v. State, 86 Ala. 617; State v. Hoyt, 47 Conn. 518; Mathis v. State, 31 Fla. 291; State v. Ryan, 13 Minn. 370.

One assignment in the motion for new trial was that the court "erred in not instructing the jury upon all the law in the case." Appellants renew the assignment in their brief here. We have consistently ruled that the motion for new trial must specify upon what point the court failed to instruct the jury. [State **All Law of Case.** v. Burrell, 298 Mo. 1. c. 679; State v. Harris, 245 Mo. 445; State v. Snyder, 263 Mo. 1. c. 668; State v. Taylor, 267 Mo. 41.] The assignment certainly is insufficient under Section 4079, Laws 1925, page 198. [State v. Standifer, *supra.*]

In their points and authorities appellants complain of Instruction 9 given by the court. The only possible basis for this complaint is paragraph 10 in the motion for new trial filed by each appellant, which in substance assigns error because "the law affecting and ad-

judging his case has not been clearly and correctly set forth . . . in the instructions given to the jury by the court in this case." This assignment does not comply with Section 4079, Laws 1925, page 198, and the question of the correctness of the instructions given is not before us for consideration. The same thing is true of assignment 9 in each of the motions for new trial, which was that "the court erred in refusing instructions numbered one and two offered by the defendant." Said assignment did not set forth in detail and with particularity the particular ground relied on. [State v. Standifer, *supra;* Laws 1925, page 198, sec. 4079.]

It is contended that the court erred in permitting counsel for the State to make improper argument to the jury. There does not appear to have been any ruling whatever by the court upon the propriety of the argument that there was whiskey at the church. No exception could well be saved where there was no ruling by the court. The record discloses merely an argument between counsel concerning the propriety of the argument of counsel for the State.

It is next complained that counsel for the State improperly said in argument that Floyd Brashers had been subpoenaed by the defense. The objection was: "Object to that; I want him to stay in the record." Upon the statement by counsel for the State that he introduced the subpoenas in the case, the court said: "Well, proceed." We are unable to say that the court erred in permitting the argument to stand. There is no showing here that the subpoenas introduced by the State did not know that Brashers had been subpoenaed by appellants. The only objection made was that counsel was outside of the record.

Finally, complaint is made of alleged inflammatory remarks alluding to the law as having been rudely and unceremoniously trampled upon, etc. We have examined the bill of exceptions and fail to find that any objection to the argument was made by counsel at the time. The assignment cannot be considered for that reason.

We have carefully considered all of the assignments properly made in the motions for new trial and urged in the brief of able counsel. We find no error committed against appellant Eaton of which he can justly complain. The judgment should be affirmed as to him.

Error was committed in submitting the case to the jury as to appellant Norman and the judgment as to him should be reversed. In the interest of justice and in view of the possibility that substantial evidence of common design or understanding between Eaton and Norman may have appeared since the trial sufficient to justify a retrial as to Norman, the case as to him should be remanded for another trial. Let an order go accordingly. All concur.