Charles William **GARTON**, Movant-Appellant,

v.

**STATE** of Missouri, Respondent.

Nos. 49570, 54850.

Supreme Court of Missouri, Division No. 2.

May 11, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied June 8, 1970.

L. Glen Zahnd, Savannah, for movant-appellant.

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

On September 1, 1961, about 9:15, Charles Garton and Joe Andrews, with Jack Streater driving the "get-away car," entered the Farley State Bank and at gunpoint held up and robbed the bank of $13,613.00. Garton and Andrews were

separately charged with the robbery and after Andrews' trial and conviction on February 6, 1962, and after a change of venue from Platte County, Garton was tried in Andrew County in April 1962, found guilty by a jury and because he admittedly had a record of one or more prior felony convictions (one being an attempt to kill a prison guard during the 1951 riot or "attempted prison break" in the Colorado State Penitentiary which, according to Garton, was held to be "null and void"), the court sentenced him to life imprisonment. That conviction was appealed upon a full transcript furnished by the state and since he was not represented by counsel this court in 1963 examined all the assignments of error in his motion for a new trial, including a complete examination of the facts and circumstances, and found that the charge and jury verdict were indeed supported by the evidence. And after further examination of numerous complaints many of which are again asserted here, the court found no prejudicial error and affirmed the conviction, State v. Garton (Mo.), 371 S.W.2d 283. The daylight robbery in the village of Farley (population 120 in 1960) is also described in detail in State v. Andrews (Mo.), 371 S.W.2d 324. In 1964 Garton instituted a 27.26, V.A.M.R., proceeding in which he attacked his 1962 conviction and the judgment in that case was affirmed, State v. Garton (Mo.), 396 S.W.2d 581. And in April 1967 the United States District Court for the Western District of Missouri entertained his habeas corpus proceeding, Garton v. Swenson, 266 F.Supp. 726. In the meanwhile, after petitions to remove his then counsel, after application for bail and after numerous other communications, this court en banc, in response to what was deemed to be the spirit of Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 and the district court's opinion in 266 F.Supp. 726, set aside this court's judgment in the original appeal, 371 S.W.2d 324, as well as its judgment in the 27.26 appeal, 396 S.W.2d 581. Permission was granted to file an amended 27.26 petition and another

lawyer (Mr. L. Glen Zahnd of Savannah) was appointed (and Garton now testifies under oath that he is entirely satisfied with Mr. Zahnd's services). A full and complete hearing was ordered and held, this time before Honorable J. Morgan Donelson, judge of the third judicial circuit, rather than before the regular circuit judge of either Platte or Andrew Counties. And as the record recites, "after a full and complete evidentiary hearing," Judge Donelson in an exhaustive, seriatim finding of fact on every issue and conclusions of law and finally in a comprehensive judgment found all the issues against Garton and he has appealed the 27.26 judgment. And, as indicated, he is represented by diligent, zealous court-appointed counsel and he has been furnished a free transcript of all the proceedings. The appeal in the 27.26 proceeding has been consolidated with the appeal of his original conviction, the two-volume transcript of the robbery trial is before the court and his indefatigable counsel has briefed and argued seven principal assignments of error, some with as many as eight subpoints, some concerned with his original trial and conviction and some with his post-conviction hearing—all of which have been duly considered by this court, including a page by page reading and analysis of all three volumes of record and a matching of the record and evidence with Judge Donelson's finding of fact and conclusions of law. And before considering the assignments of error it may be said that insofar as required, this court finds the facts to be as Judge Donelson so painstakingly found them. And, it should be added, in his trial for armed robbery Garton received every possible courtesy from a polite, careful, thoughtful circuit judge and his findings are likewise supported in every detail by the transcript of the record.

It may be that in this view, both judgments being supported by the record, the two appeals could be disposed of summarily. Nevertheless it is proposed, at least by demonstration, to consider the appellant's

eight points in the consolidated causes in some detail. At the outset it should be noted that it is now established, even tacitly conceded, that the state's evidence in 1962 and again in 1969 supports beyond any reasonable doubt the jury finding that on September 1, 1961, Garton and Andrews, with Streater as driver, at gunpoint held up and robbed the Farley State Bank. The consequence of this all but indisputable fact is that in no event could Garton ever be found innocent or exonerated and discharged as he apparently believes. The details of the bank robbery need not be repeated here—they are carefully set forth in the original Garton and Andrews cases, 371 S.W.2d 283 and 324. As indicated, in the 27.26 hearing he was given every opportunity to attack all prior proceedings but he did not, for reasons best known to him, take candid advantage of the offer. To give but a single, brief illustration: In his original trial he testified solely upon the applicability of the second offender act and admitted one felony conviction—all that was required under the act (RSMo 1959, §§ 556.280, 556.290, V.A.M.S.). In this proceeding, after expressing dissatisfaction with his then counsel, including a distinguished professor of criminal law, (appointed by a federal judge) because of their handling of what he calls "the habitual criminal hearing," when asked in this post-conviction hearing as to his prior felony record made this response: "My stand on that. I stand behind the Fifth Amendment on that."

The alleged infringements of state and federal due process relate to four matters: one, the alleged use of perjured testimony and the known suppression of evidence beneficial to Garton; two, alleged bias and prejudice and therefore the disqualification of the trial judge and the prosecuting attorney; three, the eight-pronged attack on his hired counsel to whom he now attributes "incompetent defense" and ineffectiveness, and, fourth, the unconstitutionality of the statute governing the number of challenges of jurors in jurisdictions other than in cities of over 100,000 population. These and the three assignments of error directed to his original trial are all matters which he claims entitle him to a new trial but, as stated, in no event to a discharge.

■ The fourth but simplest claim is that due process (the Fifth, Sixth and Fourteenth Amendments are invoked) was denied in that RSMo 1959, § 546.180, V.A.M.S., is unconstitutional. This statute provides for a greater number of juror challenges in criminal trials in cities of over 100,000 population than, as appellant says, "in smaller cities." This claim could be considered in several aspects but it is sufficient here to say that except for minor changes, as to numbers and populations, these and their related statutes have been on the books since 1825 and the essence of the present statute has not changed since 1919, RSMo 1919, § 4017. In 1879 the provisions were set forth in two sections, 1900 and 1902, RSMo 1879. And in 1886 the Supreme Court of the United States found "nothing in the legislation of Missouri which is repugnant to that amendment," (the Fourteenth). Hayes v. Missouri, 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578. After amendment in 1925 the statute was again attacked and the court answered: "The very question (constitutionality because of the difference in the number of challenges) first raised here was decided by this court in State v. Hayes, 88 Mo. 344." State v. Eaton, 316 Mo., 995, 292 S.W. 70, 74. There is not present in this appeal a single circumstance or reason that would impel the court to invalidate the statute.

A second and dual assertion of violation of due process is that the trial judge was biased and prejudiced in that he was a depositor in the Farley State Bank and that the prosecuting attorney was an "interested party" and therefore the information was void, that he was counsel for the bank, a depositor and a personal friend and political ally of the executive vice-president of the bank. Needless to say, the State of Missouri since territorial days has disap-

proved of "interested or prejudiced" judges (RSMo 1959, § 545.660, V.A.M.S.), and this court when judicial prejudice appears has prohibited a circuit judge from proceeding who upon application refuses to disqualify. State ex rel. McAllister v. Slate, 278 Mo. 570, 214 S.W. 85. And so it is with an "interested" prosecuting attorney, as when his automobile was involved in a collision and he was the prosecuting witness upon a charge of driving while intoxicated. "On account of his personal interest in the matter, he was disqualified to act as prosecuting attorney, or to prefer a charge based on the alleged criminal conduct of the defendant." State v. Jones, 306 Mo. 437, 445, 268 S.W. 83, 85.

The difficulty with the appellant's broad and sweeping assertion is that it is without substantial foundation or factual basis. And this is true and dispositive of two or more of his assertions of ineffective counsel, that is his charge that competent counsel would have investigated the background of the judge and the basis of his bias and would have moved to quash the information because the prosecuting attorney "was an interested party." In his 27.26 hearing the appellant was given every opportunity to support these serious charges (and it is an equally serious matter to lightly make frivolous or unfounded accusations against either prosecutor or judge). Certainly, in the circumstances of this case, the mere fact of the judge being a depositor in the bank would not disqualify him from presiding at a trial of armed robbery of the bank. State v. Bryan, 175 La. 422, 143 So. 362. In any event, the only proof of the assertion was a ledger sheet showing that on January 30, 1959, the judge as "trustee under agreement" with Walter and Helen Meyer deposited the sum of $1900 for which with its accumulations he was issued as "trustee" a certificate of deposit for $2254.50. Thus, as Judge Donelson found, the trial judge was not a depositor "in any individual or personal capacity (said account being protected by robbery insurance)," and, therefore, of course there is no foundation for the charge of bias and prejudice by reason of his relationship to the bank. If in sentencing Garton to life imprisonment it became apparent that the trial judge disapproved of armed bank robberies the fact does not demonstrate disqualifying personal bias. "A judge cannot be disqualified merely because he believes in upholding the law, even though he says so with vehemence." Judge John J. Parker in Baskin v. Brown (4 Cir.) 174 F.2d 391, 394. As with the judge so it was with the prosecuting attorney, there was no objection to the prosecutor's serving and performing the duties of his office and it does not appear and there is no demonstration of just how his relationship as counsel or depositor to the bank or how his personal friendship and political affiliation with its officials prejudiced Garton or his trial. As Judge Donelson found "the interest of the Prosecuting Attorney shown and found by the Court above is not such an interest as to disqualify the Prosecuting Attorney in the case and deny due process to Movant." State v. Bussa, 176 La. 87, 145 So. 276; 27 C.J.S. District and Prosecuting Attorneys § 12(6)b, pp. 663–664.

The first allegation of due process violation is also two-fold; one, that the state knowingly and purposefully withheld evidence material to the defendant and, two, that state's counsel knowingly used the perjured testimony of one of Garton's accomplices, Jack Streater. In connection with due process infringement it is asserted that the state "withheld from Appellant the signed statement of an alleged co-conspirator"—meaning Streater's confession. This assignment overlaps appellant's sixth point relating to trial error, that is his point that the court erred in admitting Streater's hearsay testimony "on the theory (to employ appellant's language) that it was the admissible testimony of a co-conspirator." It is also objected that Streater's written statement, now attached to the 27.26 transcript, shows that the "declarations" attributed to Garton could not have been in

furtherance of the bank robbery. It is sought to bring the due process assignments within State v. Thompson, Mo., 396 S.W.2d 697, and Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690. The Thompson case also concerns the use of perjured testimony which the court found, as is true here, "were at most mere inconsistencies." But as to due process, noting a series of federal cases, the court recognized the obvious principle that "the suppression of (or failure to disclose) evidence in the possession or control of the prosecution which is favorable to defendant and which might be persuasive to a jury, constitutes such a fundamental unfairness as to invalidate a conviction because violative of due process." (396 S.W.2d 1. c. 700).

And again there is no substantial factual support for any of these claims or the application of these fundamental concepts, all designed to insure a fair trial. Andrews and Garton, with the use of "pancake" makeup and hair spray, went to great pains to disguise their features. The result was that everyone who saw them immediately noticed "too much of an orange tinge," the lady bank employees said, "Well, yellowish brown. It didn't look normal," another witness said "they wore a funny coloring on their faces." Despite their elaborate disguises three bank employees had no trouble identifying both Andrews and Garton, particularly Garton after his arrest in Hobbs, New Mexico. Garton pointed a snub-nosed revolver at the cashier and "He says 'get up and open the vault,' and I said 'the vault is open,' and he says—he used his gun and said 'get up and open that vault'" but, the cashier said, "We were face to face in the vault. I had a good look at him." And he said that the makeup did not change Garton's features. In addition, the basis of the claim of suppressed evidence did not arise in Garton's case. In his 27.-26 hearing it was made to appear that upon Andrews' preliminary hearing a man by the name of Colley, a casual bank customer, in identifying one of the robbers said that one

of them, presumably Garton, was wearing a moustache. No witness in Garton's trial identified either of the gunmen by a moustache (and the record in Andrews' cases reveals, incidentally, that Mr. Colley did not identify Garton at all, he only identified the man, Andrews, who pointed a gun at him). In these briefly noted circumstances the assertion of suppressed evidence in Garton's case, within the meaning of the constitutional safeguards, is without substance.

■ The assignments of error and of invasion of fundamental safeguards in connection with Streater, his written confession and his testimony are somewhat confused and jumbled. However, Streater's written statement was not used in Garton's trial and a comparison of the statement with his testimony in this case, as well as in Andrews' trial, reveals not even minor discrepancies. In the argument section of appellant's brief it is said that Streater's statement "also recited that Streater did not know Appellant's last name, whereas the testimony by Streater at the trial revealed an acquaintanceship with Appellant and Appellant's wife for at least several weeks." The latter part of the assertion may be correct and accords with Streater's testimony but the basis of the claim that Streater did not know the defendant's last name, as far as can be surmised from the record, is that throughout the statement "Joe Andrews'" full name is used while Garton is always referred to only as "Charley"—for example, "picked Joe Andrews and Charley up," or, "I drove up to the bank headed west and Joe Andrews and Charley got out of the car and went into the bank." Nowhere does the unlikely fact appear, even if sufficient to support the assignment of error, that Streater did not know Garton's last name. Thus, in this trivial circumstance there is no sound foundation for the assertion of violation of constitutional principle.

To fully understand and appreciate the objections to Streater's testifying to what appellant characterizes as "hearsay dec-

larations," not in furtherance of the robbery, some further background not in the former opinions must be noted. The background also bears on the assertion that Streater's written statement "excluded the possibility of an earlier 'dry run.'" Not even a month prior to the robbery, but sometime in August, Streater rented a farm, Route 2, Parkville, approximately 13 miles from Farley and it was here that they first secreted the stolen white 1960 Pontiac used in the robbery. And it was from this farm that after the robbery, Streater and Donnie, in Streater's 1956 De Soto, drove into the area of the bridge on Platte River and Garton and Andrews came "out of the woods" and were driven to Kansas City. Prior to renting the farm Streater resided at 10 East 32nd Terrace, Kansas City, and Andrews lived at 16 East 32nd Terrace. Joe and Streater became acquainted in these circumstances: Streater, although not divorced and liable for the support of two children in California, lived with Donnie and after the robbery and after the three-way split of $13,000.00, on September 20, 1961, they were married in Miami, Oklahoma. At the same time Joe Andrews was living with Donnie's mother, Anna Mae Heldstep. And it was in that relationship and connection that Streater and Donnie met Garton and Garton's wife, Goldie, and knew that they were from New Mexico.

And, it was after "they had made that first attempt," on August 26th, that Donnie learned of Garton's and Andrews' plans to rob the Farley State Bank and of Streater's connection with them and the proposed robbery. It is not necessary to further encumber the books with a recitation of the details of the final robbery, they are all set out in the former appeals, particularly in Garton's case, it is sufficient here to say that the testimony overwhelmingly establishes not only that Garton and Andrews robbed the bank on September 1, 1961, but "it had been planned about four months." Prior to September 1st, however, and pursuant to plan, they all drove into Farley on August 25th fully prepared and intending to rob the bank but did not because,

as Garton and Andrews reported to Streater, "they said it looked like all the town was there, so they didn't think it was a good deal." Garton was put out, said "he was out the expense of coming to town (from Hobbs, New Mexico) on a dry run." And so as a result of the frustrated experience they changed the plans and "decided to do it as soon as the bank opened instead of the evening."

 In short, as was said on Garton's original appeal, "a careful reading and re-reading of this entire record tends to show that there was no abandonment of the original plan to rob the Farley State Bank, but only that the time for the robbery was delayed to a more opportune time. The date for carrying the plan into execution was incidental to the plan." (371 S.W.2d l. c. 287). It may only be added by way of conclusion that the three transcripts all but conclusively establish prior planning, preparation and a three-way conspiracy as well as concert of action all culminating in the bank robbery and a division of the spoils. And even then the conspiratorial scheme was not concluded because Garton and Andrews hid the guns, ammunition, hats and six hundred thirty silver dollars in a hollow cottonwood tree on the banks of the Platte River—all for future use and further division, no doubt. And in these circumstances there was no error in admitting Streater's testimony on the theory (stated by appellant) that it "wholly related to plans to carry off the bank robbery on August 25" and therefore had no connection with the executed robbery on September 1. In summary, it couldn't be better put than on the previous appeal, 371 S.W.2d l. c. 287: "Since it appears from the record that there was a definite and continuing conspiracy to rob the particular bank and that the plan was, with reasonable promptness, carried into execution, all of the statements and acts of the co-conspirators, made in the furtherance of the conspiracy, were properly admitted in evidence for the purpose of showing the commission of the offense for which the conspiracy

was designed." And, incidentally, while Streater in his written confession did not mention the frustrated robbery trip, at least in detail, but was confined to the recitation of detail and fact of the actual robbery—it does not follow that the statement was inconsistent with his testimony in the trial and thus there is no demonstration of error in denying to appellant the use of the written statement. State v. Simon, Mo., 375 S.W.2d 102; State v. Redding, Mo., 357 S.W.2d 103, 109. And certainly the circumstances of this record are not comparable to State v. Cross, Mo., 357 S.W.2d 125, or to State v. Chernick, Mo., 278 S.W.2d 741, in which the statements of the wounded turncoat were not only made out of the defendant's hearing and presence after the robbery but "when defendant and the others were no longer acting together or with a common purpose, if so, in the furtherance of crime at the Southwest Bank."

■ And here may be interpolated appellant's claim of error in his original trial in admitting in evidence the sawed-off shotgun and the shotgun shells (not used by Garton and Andrews in holding up the bank but loaded and carried to and from the robbery on the floorboard of the front seat of the Pontiac). These objects in these circumstances meet the tests of relevance, materiality and probative force, were definitely identified with the participants in the offense (State v. Wynne, 353 Mo. 276, 182 S.W.2d 294; State v. Miller, 364 Mo. 320, 261 S.W.2d 103) and therefore were properly admitted in evidence. State v. Johnson, Mo., 286 S.W.2d 787; State v. Andrews, Mo., 371 S.W.2d 324.

■ This leaves only upon this record the very distasteful claim of infringement of due process by reason of ineffective assistance of counsel and "incompetent defense afforded him by his attorneys." Aside from the charges with reference to the trial judge and the prosecuting attorney it is urged that his lawyers failed to make "application in writing" rather than oral application for a continuance, quoting present counsel, "for the reason that there are witnesses in New Mexico" who had testified in Garton's "habeas corpus" (probably his extradition) and who could not be present, one on account of an accident and the other on account of illness. Incompetent and ineffective counsel is said to be shown by counsel's failure to object and request a jury discharge when Streater referred to Garton as "a well-known criminal who had spent 20 to 30 years in the penitentiary," by their failure to request an instruction on credibility of an accomplice and by failure to file a motion for acquittal. In support of these asseverations appellant cites the opinion of United States District Judge James H. Meredith in Crosswhite v. Swenson,—No. S 69 C 56 ——, even though this court's opinion in Crosswhite v. State, Mo., 426 S.W.2d 67, was approved and "it is the opinion of this court that a further hearing on these grounds (including ineffective assistance of counsel) will serve no useful purpose."

And it would serve no useful purpose here to go through all these grounds in detail and demonstrate upon the transcripts their fallacies. In the original trial Garton was represented by Mr. Joseph A. Harrington and he in turn was assisted by his associate, Mr. Commodore M. Combs, Jr. Mr. Harrington died December 28, 1968, prior to the 27.26 hearing. He was an experienced trial lawyer, well-known as a successful practitioner of criminal law. In the 27.26 hearing Mr. Combs said, almost casually, "I recall this much vividly, that after trial was over that Mr. Harrington, out of his pocket, paid for the return trip for both the witness (his only witness—Garton did not testify—barmaid Tommie Louise Lee Owen) and Mrs. Garton (Goldie) because they had no funds." Mr. Combs, likewise a well-known and respected lawyer, said, "I did the very best I could, yes, sir." And a reading of the two-volume record in the robbery case reveals that Mr. Harrington and Mr. Combs did an outstanding job, particularly in view of the facts which of course were made by Garton, Andrews and Streater. They did

not go through the futile gesture of filing a motion for acquittal but it is not suggested how Garton was prejudiced by the fact; on the previous appeal, the court found as this court would of necessity now find, that the evidence all but conclusively established Garton's guilt. Streater's examination and cross-examination extends over 108 pages and it may be said, despite his obvious lack of character, that he was corroborated by three bank employees, Donnie and by many physical facts and circumstances. Mr. Harrington cross-examined him closely, persistently, even harshly, in an effort to impress the jury with his unworthiness. And, ironically, it was in Mr. Harrington's effort to establish the inference that he had been promised immunity in exchange for turning "state's evidence" and in response to the question "not any kind of a promise" that Streater volunteered, "Well, they said 'would I like to stand trial with two well-known criminals that spent twenty and thirty years in the penitentiary.'"

■ As indicated, it is not necessary here to demonstrate in detail the complete untenability of the claim of ineffective counsel. On this issue as on all others Judge Donelson made a supported finding of "skilled lawyers" and by this state's standards and upon this record that finding is all but incontestable. Dickson v. State, Mo., 449 S.W.2d 576 and Crosswhite v. State, supra. But more in point here, particularly upon the claim of violation of due process, is the fact that measured by the standards of the federal courts there is indeed no basis for the claim of ineffective and incompetent counsel. The governing federal principle is set forth in detail in a fully documented opinion handed down concurrently. "(T)he rule established in many cases in the federal courts is that the standard by which effectiveness of counsel is measured is whether his actions (counsel's) or lack thereof made the trial a farce or a mockery of justice." State v. Schaffer, Mo., 454 S.W.2d 60. And see again Crosswhite v. State, 426 S.W.2d 67;

State v. Cook, Mo., 440 S.W.2d 461 and the annotation 74 A.L.R.2d 1390.

The judgments in both cases are affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.