THE STATE v. L. H. NEAL, Appellant.—300 S. W. 1073.

Division Two, December 12, 1927.

*Hiett, Lamar & Covert* for appellant.

*North T. Gentry,* Attorney-General, and *David P. Janes,* Assistant Attorney-General, for respondent.

DAVIS, C.—The Prosecuting Attorney of Wright County filed a verified information in the circuit court charging that defendant on June 11, 1926, made an assault with intent to kill, on purpose and of malice aforethought, on one Fletcher, by shooting at him with a certain rifle. The jury returned a verdict assessing the punishment at five years' imprisonment in the penitentiary. An appeal was taken from the judgment entered thereon.

The evidence for the State warrants the finding that defendant and William Fletcher resided in Astoria, Wright County, on June 11, 1926, and for some years prior thereto. Defendant ran a general store and was postmaster. Fletcher was the mail carrier. The distance between the store and Fletcher's home was about sixty feet. Two or three weeks prior to June 11, 1926, it seems that defendant had cursed Mrs. Fletcher, later pleading guilty to the charge and paying a fine. The store and the home were located at the intersection of public roads. Fletcher's house was a frame building of three rooms, constructed in the shape of a T, two of which faced south along the east-and-west road, and the third room joined the other two at the center. The yard was enclosed by a fence. A few days prior to June 11, 1926, while Fletcher was feeding his hogs, defendant came up with a Winchester, but said nothing. Later on the same evening while going down a lane, Fletcher met defendant, who cursed and called him opprobrious names. Fletcher refused to reply. At this time defendant had his Winchester rifle. Later the same evening he again met defendant, who continued cursing him. Defendant inquired if Fletcher felt game and stout that evening.

Fletcher replied, "You are G—— d—— right I do." Defendant then wanted to know if Fletcher desired a match that evening, and Fletcher said that he would match him sometime if nothing else would do. Fletcher stated neither he nor defendant had a gun at that time. That night two shots were fired into his house, one coming from the direction of the mill and the other from the store. Fletcher stated that prior to June 11, 1926, he had never had a difficulty with Doc or Howard Neal, sons of defendant. Doc Neal married the niece of Fletcher and was about twenty-one years of age. Howard Neal was fourteen or fifteen years of age.

On the afternoon of June 11, 1926, about four o'clock, Doc Neal rode a pony at a fast clip up the road, and alighting, went to the field where Fletcher was plowing. He came up the road cursing, desiring to know the whereabouts of Fletcher, and upon seeing him came across the field cursing. Coming to Fletcher he wanted to know what he had against him, calling him a vile name. Fletcher was talking to Sam Wilson. Fletcher, who observed that Doc had been drinking, told him he had nothing against him. With his fist drawn back Doc finally struck at Fletcher, who warded off the blow, hitting him and knocking him down. The fight continued with similar results. Howard Neal, during the fight, came through the field hallooing to his brother to kill him. He had an open knife in his hand, with which he struck at Fletcher as he came up. Fletcher then turned and ran to the house, Doc and Howard following him. He reached the house thirty or forty steps before the boys, grabbed his single-barrel shotgun, loaded it and went to the kitchen door. His sister, Doc's mother-in-law, stood in the door with a baby in her arms, requesting Doc to go away, saying she desired no trouble and he had no business there. Doc cursed her, and threw a rock or clod of dirt, which struck the door facing. Fletcher then stepped around, told Doc to stay back, and that if he did not do so he would hurt him. Doc replied with a vile name, saying, "You are not game enough to shoot me." Fletcher then shot, killing Doc Neal, who died shortly thereafter. Howard Neal, who was in the yard, hied to his father's store about sixty feet away, and almost immediately they emerged together, each with a Winchester rifle, defendant saying, "Shoot his G—— d—— heart out." The boy, standing on the store porch, then commenced shooting into the house. Defendant then advanced a little beyond the gate into Fletcher's yard, threw up his gun to shoot at him while in the house, when Fletcher shot through the screen door, hitting defendant, who was standing in Fletcher's front yard. Defendant then retreated out of sight, defendant and Howard shooting into the house and keeping up the bombardment for about an hour. Surmising that Fletcher was killed, Howard advanced to the house and while peeping around the door was shot by Fletcher,

dying the next day. It seems that Fletcher, during the bombardment, lay on the floor to escape harm. The bullets went through the walls and glass in the windows of the house, demolishing the mirror in the dresser and the face of the clock and piercing the tea kettle. It seems also that a bullet struck the lamp, spilling the oil on the dresser and setting it afire, damaging it and burning up clothing. The house also caught fire, but was extinguished after the bombardment. Howard Neal, in addition to using the rifle, operated a shotgun. After Howard was shot, the defendant continued shooting into the house for a great length of time. Such other facts as are pertinent will appear later.

I. Under our practice the question of error as to matters of exception must be preserved in a motion for a new trial. Therefore, in considering error, save as to matters found in the record proper, the motion is our guide. The instant motion contains seven assignments of error. The first two assignments complain of the admission of incompetent, irrelevant and immaterial evidence and of the exclusion of competent, relevant and material evidence. The third and fourth assignments charge the court erred in giving and refusing certain numbered or lettered instructions. The sixth and seventh assignments complain generally of the argument of counsel for the State to the jury without specification and of the failure of the court to instruct the jury to disregard the argument.

The cause was tried after Section 4079, page 198, Laws 1925, became effective, which prescribes that the matter complained of must be set forth in the motion for a new trial in detail and with particularity in separate numbered paragraphs the specific grounds or causes therefor. We have held that a general complaint, that evidence, competent or incompetent, relevant or irrelevant, material or immaterial, was admitted or rejected, constitutes an insufficient assignment of error under the statute. [State v. Murrell, 289 S. W. 859.] The complaint that the court erred in giving certain instructions, naming them by number or letter, fails to comply with the commandment of the statute. This question has also been decided adversely to defendant's contention. [State v. Standifer, 289 S. W. 856.] It is also evident, from our interpretation of the statute, that complaints that the State's counsel made an unwarranted or illegal argument to the jury and that the jury should have been instructed to disregard the argument are too general to raise the question of error. To permit us to consider it, the argument should have been set forth in the motion specifically, in detail and with particularity, showing the specific grounds and causes for the complaint. The statute contemplates that the court's attention shall be called to the particular

matter with certainty. The above assignments of error found in the motion for a new trial fail to comply with the statute and cannot be considered.

II. The fifth assignment of error relates to the newly-discovered evidence which sets forth detailed facts relating to the rifle assumed to have been used by defendant and which evidence tends to show that no shot fired from the shotgun penetrated or scarred the stock of the rifle assumed by the State to have been in defendant's hands at the time Fletcher wounded him. It was inferred from the statement that defendant did not carry the rifle when Fletcher shot him. The affidavits accompanying the motion tend to show nothing further than that the witnesses inspected the rifle after the trial but found no shot marks of any description thereon, and that the facts came to the knowledge of the witnesses subsequent to the trial.

This assignment cannot be maintained. Among other things there is a lack of a showing of due diligence on the part of the defendant. The affidavits show that the rifle was in the possession of the State without a showing that defendant was ignorant of the fact. As the rifle was in the hands of the State, we assume that defendant knew it, and that his failure to request the State to examine it or to file a motion for its inspection, either course of which was open to him before the trial, shows a lack of due diligence. There is no showing that defendant attempted to avail himself of the right of inspection. [State v. Estes, 209 Mo. 288, 107 S. W. 1059; State v. Whitsett, 232 Mo. 511, 134 S. W. 555.]

III. Defendant maintains that the evidence shows conclusively a lack of malice aforethought to kill Fletcher. In determining the question we may only consider the State's evidence and such portion of defendant's evidence as tends to admit malice. The contention is based on the hypothesis that the State's evidence shows that information from Howard to defendant that Fletcher had killed Doc Neal engendered such heat of passion and hot or wild blood as to negative and destroy the inference of malice. We have held that an unprovoked assault upon a near relative could arouse such passion in defendant's mind as to justify an instruction on manslaughter. [State v. Turner, 246 Mo. 598, 152 S. W. 313.] Passion, *per se*, never reduces murder to manslaughter. The act must be the unpremeditated result of hot blood aroused by an unprovoked assault. Mere passion or heat of blood does not destroy malice irrespective of the provocation which engendered it, for the provocation alone must have excited the passion. We need not, however, consider that phase of the evidence, even though the evidence tends to show Doc Neal provoked the assault, for we think the record develops facts tending

to show malice prepense, and in ruling on a similar proposition this court has said that prior threats constitute evidence of a malicious spirit. [State v. Cochran, 147 Mo. 504, 49 S. W. 558.]

In passing upon the question of the presence of malice, the jury were authorized to take into consideration the surrounding facts and circumstances, and reference may be had to the previous relations of the parties. The surrounding facts and circumstances tend to show that shortly preceding the day of the shooting, witness Ballard was present during a conversation between Fletcher and defendant to the following effect: Defendant inquired of Fletcher whether he felt pretty strong and the reply was that he did. Defendant asked him if he wanted to match a game, and Fletcher said, "You will get a game matched some of these times." Defendant then said, "I have a good notion to get my gun and blow him all to hell." Whether the last ejaculation was within or without the presence of Fletcher is uncertain, but we infer from the context that Fletcher had departed. Witness Shelby for the State testified that on the day of the shooting, at a fish fry, he heard defendant, referring to Fletcher, say to one Mosley that his way of settling trouble was to shoot it out or knock it out. The evidence further tends to show, previous to the shooting, that defendant cursed Fletcher and called him vile names.

The above facts and circumstances constitute some proof tending to show that defendant prior to the time he bombarded the house bore malice toward Fletcher. It may then be inferred from his previous spirit that he was actuated by malice prepense when he shot into the house intending to kill Fletcher. It was, however, a question of fact for the determination of the jury and therefore without our province. The contention that the recorded evidence conclusively shows the want of malice must be answered in the negative.

The judgment is affirmed. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.