## State of Missouri, Respondent, *v.* Charles P. Emerich, Appellant.

### April 17, 1883.

1. Abortion—Manslaughter. — It is error to instruct the jury that if the defendant, by using an instrument to destroy an unborn child, killed the mother, he is guilty of manslaughter in the first degree if the child was not quick, and of manslaughter in the second degree if the child was quick.

2. —— Prior to 1879, the killing of the mother in an attempt to commit abortion was not manslaughter unless the child was quick.

3. —— The word "quick" is used in the statute in its common-law sense, to denote a definite period of pregnancy.

4. —— Indictment. — An indictment for the killing of a mother in an attempt to commit an abortion must charge that the mother was "quick with child."

5. Jurisdiction of St. Louis Criminal Court. — The St. Louis Criminal Court has no jurisdiction to try indictments for misdemeanors.

Appeal from the St. Louis Criminal Court, Van Waggoner, J.

*Reversed, and prisoner discharged.*

C. P. Johnson, for the appellant.

W. C. Jonas, for the respondent.

Bakewell, J., delivered the opinion of the court.

The indictment charges that defendant, at St. Louis, on December 30, 1877, made an assault upon the body of one Maggie Gibbons, then and there pregnant and "big with child," and then and there unlawfully and feloniously used and employed upon her womb an instrument of hard substance by forcing it into her womb with the intent to procure an abortion or the miscarriage of said Maggie Gibbons, the same not being necessary to preserve her life nor advised by a physician to be necessary for that purpose; that by means and in consequence of said employment of said instrument by defendant upon the body of said Gibbons,

she was then and there mortally wounded, and languished until January 3, 1878, on which day she died of the mortal wound aforesaid, wherefore the jurors present that defendant, in the manner and by the means aforesaid, did unlawfully, wilfully, and feloniously kill and murder said Maggie Gibbons, contrary to the form of the statute, etc.

The jury found defendant guilty of manslaughter in the first degree, and assessed his punishment at imprisonment in the penitentiary for the term of five years. The sentence was in accordance with the verdict.

There was testimony tending to show the following state of facts : —

Maggie Gibbons was a girl of nineteen years of age, in the employ of defendant, who kept a laundry. He begot a child upon her body. After she was gone with child for a period of time variously stated by the physicians at from eight to sixteen weeks, the defendant, for the purpose of making her miscarry, used an instrument by which he so ruptured the womb, that the fœtus escaped into the abdomen, the necessary consequence of which was the death of both mother and child.

The physicians all testified, that it was formerly held in the profession that the fœtus was not alive until it was felt by the mother to move ; and that, when this happened, it used to be said that she was "quick with child," and not before ; but that, in the present stage of medical science, it is known that the fœtus is quick from the moment of conception, in the sense that it is alive from that moment. There was medical testimony to the effect that it is not certain whether the sensation called "quickening" is attributable to the movement of the fœtus or to a movement of the womb itself at a certain stage of gestation ; that women not pregnant sometimes erroneously suppose that they feel the movement of the fœtus ; and that the movement is usually felt from the tenth to the twenty-fifth week, ordi-

narily about the sixteenth week. But it is perceived by the
woman alone, and science has to depend wholly upon the
veracity of the patient to determine the period of " quick-
ening," if by that is meant, the feeling of a motion which
is taken by her as an indication that she bears within her a
being capable of independent motion.

The court instructed the jury as follows : —

" If the jury believe and find that, in the month of De-
cember, 1877, one Maggie Gibbons was a woman about
nineteen years of age, and was then pregnant with child ;
that, with an intent to destroy such child, the defendant did,
at the city of St. Louis, and in said month, make an as-
sault upon her ; that with such an intent, and without a de-
sign to effect the death of said woman, he did feloniously
and wilfully use and employ some instrument of hard sub-
stance in and upon the womb of her, in an effort to destroy
the child therein, and that, by so doing, he did inflict upon
her a mortal wound, of which she, subsequently, and in the
month of January then succeeding, actually died, you will
find him guilty of manslaughter.

" If, at the time he did this, the said child was already a
quickened child, you will convict him of manslaughter of the
second degree. But if, at that time, it had not quickened,
then guilty of manslaughter in the first degree. And unless
from the evidence you so believe and find, you will acquit
him.

" If, of the guilt of defendant you are convinced by the
evidence beyond a reasonable doubt, by which is meant con-
vinced to a moral certainty, your duty is to convict him,
otherwise to acquit him.

" If you convict him of manslaughter of the first degree,
you will assess his punishment at imprisonment in the peni-
tentiary for any term not less than five years ; and if of man-
slaughter of the second degree, at like imprisonment for
any term not less than three, nor more than five, years."

Defendant asked the following instruction, which was refused : —

" Every physician or other person, who shall wilfully administer to any pregnant woman any medicine, drug, or substance whatsoever, or shall use or employ any means whatsoever, with intent thereby to procure abortion, or the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of any such woman, or shall have been advised by a physician to be necessary for that purpose, shall upon conviction be adjudged guilty of a misdemeanor, and punished by imprisonment in a county jail not exceeding one year, or by fine not exceeding $500, or by both such fine and imprisonment."

The state was not represented in this court.

Though it is true that the advance of science shows that the term " quickening " as indicating the beginning of life in the fœtus, has no foundation in physiology, yet the common-law writers held, that life began only when the woman became " quick with child." Before this time, a woman sentenced to be hanged might have been executed at common law, though pregnant. "*Enceinture*," says Sir Matthew Hale, " is no cause to stay execution, unless she is *enceinte* with a quick child, or, which is all of one intendment, if she be quick with child." Hale's P. C. 2413.

The framers of our statutory provisions in regard to abortion, undoubtedly used the words " quick with child " in the old common-law meaning of the phrase, when they speak of the woman being " pregnant of a quick child." The statute recognizes a period of pregnancy previous to quickening. As the child is, in truth, alive from the moment of conception, this quickening must be taken to mean that period of pregnancy at which the womb, having become too large to be contained in the pelvis, rises into the abdomen, when the woman feels, or imagines that she feels, the movement of the fœtus.

At the time of the commission of the offence with which defendant was charged, our statutory provisions as to the offences of this character were as follows: —

"The wilful killing of an unborn quick child by any injury to the mother of such child, which would be murder if it resulted in the death of such mother," was manslaughter in the first degree.   1 Wag. Stats. 446, sect. 9 ; Rev. Stats., sect. 1240.

"Every person who shall administer to any woman pregnant with a quick child, any medicine, drug, or substance whatsoever, or shall use or employ any instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by a physician to be necessary for that purpose, shall, if the death of such child or mother thereof ensue from the means so employed, be deemed guilty of manslaughter in the second degree.   1 Wag. Stats. 447, sect. 10 ; Rev. Stats., sect. 1241.

"Every physician or other person who shall wilfully administer to any pregnant woman any medicine, drug, or substance whatsoever, or shall use or employ any means whatever with intent thereby to procure abortion or the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by a physician to be necessary for that purpose, shall, upon conviction, be adjudged guilty of a misdemeanor, and punished by imprisonment in a county jail not exceeding one year, or by fine not exceeding $500, or by both."   1 Wag. Stats. 450, sect. 34.

After the commission of the offence charged in the indictment in this case, and at the revision of the General Statutes in 1879, this last section was amended by adding these words : "But if the death of such woman ensue from the means so employed, the person so offending shall be deemed guilty of manslaughter in the second degree."   Rev. Stats., sect. 1268.

It is plain that the statutory provisions in force when the offence charged was committed, provide for three separate and distinct offences.

The first in order is the wilful killing of an unborn quick child, by an injury to the mother of the child which would be murder if it resulted in the death of the mother. This is manslaughter in the first degree.

The next is administering to the woman quick with child any drug, or using on her any instrument, with intent to destroy the child, so that the death of the mother or child ensues. This is manslaughter in the second degree.

The third is the employment of any means with the intent to procure abortion. This is a misdemeanor.

The instructions given were manifestly erroneous. It is only the killing of the unborn quick child that is manslaughter in the first degree. But the indictment is not drawn upon that section of the statute. The killing of the mother in the attempt to produce an abortion, was at most manslaughter in the second degree, under the statute. But, at the date of the offence committed by defendant, this was not even manslaughter in the second degree, unless the child was quick.

It is plain that the conviction cannot be sustained. It must be reversed for the erroneous instruction. It remains to consider whether there can be any conviction under the indictment. If not, it is useless to remand the cause.

As an indictment for the felony, the indictment is bad. The attempt seems to have been to indict for manslaughter by employing an instrument upon a woman quick with child. But the indictment is fatally defective in that it does not allege that the woman was " quick with child."

If it be claimed that the indictment is for the misdemeanor, then it is bad, because it departs so far from the terms of the statute, that the court cannot see on which of the two sections it is drawn. Nor would such a defect be aided by verdict unless perhaps by a verdict in such a form as to in-

dicate the statute. 1 Bishop's Cr. Proc., sect. 612, and cases cited there.

It is true that it is sufficient, in an indictment upon a statute, if the offence be set forth with substantial accuracy (*The State* v. *Ross*, 25 Mo. 429), that an indictment is not insufficient if enough remain to constitute a good charge of the offence after striking out objectionable parts (*The State* v. *Wall*, 39 Mo. 532) ; and that, inasmuch as an indictment for a misdemeanor is not in every case necessarily vitiated by the allegation that it was feloniously committed (*The State* v. *Joiner*, 19 Mo. 224), if this and similar allegations are disregarded as surplusage in the present indictment, though it be bad as an indictment under section 1241, enough will still remain to support a conviction for a misdemeanor under section 1268, as that section stood before it was amended. It is plain, at any rate, that the indictment alleges every fact necessary to constitute the misdemeanor of employing means with intent to procure abortion. But, setting aside the right of the prisoner to be distinctly informed of which of these two distinct offences he was accused, — for they are not degrees of the same offence, but distinct offences, — the matter is not mended at all if it be held that the indictment, though bad as an indictment for a felony, would support a conviction for the misdemeanor. The indictment charges no statutory felony, because it is for killing the woman by employing instruments with intent to destroy her unborn child, and it does not say that the child was quick ; and the St. Louis Criminal Court has no jurisdiction to try an indictment for misdemeanor ; but, when an indictment for misdemeanor is returned into that court by the grand jury, it must cause the indictment to be sent for trial to the St. Louis Court of Criminal Correction. Rev. Stats., sects. 1777–1779 ; *The State* v. *Hamm*, 11 Mo. App. 585. One indicted for a felony might be convicted in the St. Louis Criminal Court of a misdemeanor (*The State* v. *Barker*, 64 Mo. 282) ; but no trial could be

had in that court on a proceeding originally for misdemeanor, whether begun by indictment or information.

The statute provides, that if a conviction be reversed in this court on the appeal of the defendant, we must direct a new trial, or discharge the prisoner, according to the circumstances of the case. There can be no new trial on this indictment, and, to our great regret, we find it to be our duty to direct the discharge of defendant.

The judgment is reversed, and the prisoner discharged. All the judges concur.