STATE OF MISSOURI, Respondent, v. SOPHIE CELINE MILLER, Appellant, No. 43349—261 S. W. (2d) 103.

Division Two, September 14, 1953.

Motion for Rehearing or to Transfer to Banc Overruled, October 12, 1953.

*Morris A. Shenker* for appellant.

*J. E. Taylor,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for respondent.

BOHLING, C.—Sophie C. Miller, who is not a duly licensed physician, appeals from a judgment imposing a year's imprisonment and a $500 fine upon conviction of the felony of abortion under § 559.100. (Statutory references are to RSMo 1949 and V.A.M.S. unless otherwise stated.) Defendant attacks the indictment, the sufficiency of the evidence, rulings of the court on the opening statement

and argument for the State, the admission of evidence, and an instruction. The case is pending on submission on rehearing. We adhere to and readopt many of the views of Barrett, C., on original submission, making use of the original opinion without quotation and subject to such changes as may appear proper in the light of the submission on rehearing.

■ Defendant claims the conviction cannot stand because the indictment did not charge any offense, being fatally defective in failing to set out whether or not the prosecuting witness, or her quick child, died as a result of the alleged acts of the defendant. The contention was first made in defendant's motion for rehearing in this court.

Section 559.100, so far as here material reads:

"Any person who, with intent to produce or promote a miscarriage or abortion, * * administers to a woman (whether actually pregnant or not), or who, with such intent, * * uses upon her * * any instrument * * to produce a miscarriage or abortion (unless the same is necessary to preserve her life or that of an ■ unborn child, or if such person is not a duly licensed physician, unless the said act has been advised by a duly licensed physician to be necessary for such a purpose), shall, in event of the death of said woman, or any quick child, whereof she may be pregnant, being thereby occasioned, upon conviction be adjudged guilty of manslaughter, and punished accordingly; and in case no such death ensue, such person shall be guilty of the felony of abortion, and upon conviction be punished" as in said section provided.

The quoted provisions appear in Laws 1907, p. 230, which, briefly, repealed and re-enacted § 1825, R. S. 1899. As more fully developed in State ex rel. Gaston v. Shields, Div. II, 1910, 230 Mo. 91, 98(I), 130 S. W. 298, 299(1), §§ 1823, 1825, and 1853, R. S. 1899, covered different phases of the same subject matter, and, as Laws 1907, p. 230, covered the entire subject, it was held that said act repealed by implication § 1853 (and § 1823, not material here), in addition to § 1825, R. S. 1899. Sections 1853 and 1823, R. S. 1899, were carried forward as §§ 4459 and 4456, R. S. 1909, and were expressly repealed by Laws 1919, p. 256.

Sufficient for the purposes here, unless the prohibited act was a medical necessity to preserve the life of the woman or that of a "quick child," § 1825, R. S. 1899, provided that the death of a quick child occasioned by an abortion "with intent" to destroy such child was manslaughter; and § 1853, R. S. 1899, made the administering of any drug etc., or the use of instruments upon a pregnant woman "with intent" to procure an abortion or miscarriage a misdemeanor; but if the death of the woman ensued, the person was guilty of manslaughter. The term "quick child" recognizes a period of pregnancy previous to the fetus becoming quick. State v. Emerich, 13 Mo. App. 492;

Rex v. Phillips, 3 Campbell 77; 1 C. J. S. 318, § 6,d; 1 Am. Jur. 138, §§ 17, 18.

State v. Dean (1900), 85 Mo. App. 473, 475, was a prosecution for "abortion," under then § 1853, R. S. 1899, mentioned supra. The court held there was no merit in the point that the indictment failed to state whether death resulted or not, stating: "But in the case at bar the offense is made out by alleging and proving that the defendant willfully administered drugs to the pregnant woman intending thereby to procure abortion or miscarriage, *excepting* only when it is necessary to preserve the life of the woman, or so advised by a physician. These two exceptions enter into and constitute a description of the offense and under the rule should be negatived in the indictment. But as to whether the woman died or not, these merely have to do with the extent of the punishment and do not constitute any part of the description of the offense." This was the construction of the statute legally identical, so far as material here, with the provisions of now § 559.100 at the time the subject matter was revised and re-enacted by Laws 1907, p. 230.

State ex rel. Gaston v. Shields, supra, involved an indictment for abortion. (Now § 559.100). An issue was whether the Circuit Court, having jurisdiction over felonies, or the Court of Criminal Correction, having jurisdiction over misdemeanors (§ 1853, R. S. 1899) of the City of St. Louis had jurisdiction. That indictment, like the instant indictment, did not state whether the woman or any quick child died; but the instant issue was not ruled. However, in overruling relator's contention, the court, Burgess, J., writing, closely analyzed the statute and said (230 Mo. l.c. 103, 105, 130 S. W. l.c. 301): "The production of abortion is not the offense denounced by the statute, but *the intent* to produce a miscarriage or abortion, by administering drugs, using instruments, etc., where the act is not a medical necessity. The intent constitutes the gravamen of the offense and the failure of the attempt has no bearing whatever upon the guilt of the defendant, as the actual production of a miscarriage is unnecessary to the completion of the offense. * * * * It will be seen that the expression 'felony of abortion' occurs in that part of the statute which prescribes the punishment. The elements of the offense or offenses are fully described in other portions thereof."

The reasoning in the Gaston case is in harmony with State v. Dean, supra, and later cases; see, among others, State v. Fitzgerald, Mo., 174 S. W. 2d 211, 215 [9]; State v. Anderson, 298 Mo. 382, 250 S. W. 68, 71. The Anderson case involved a charge of manslaughter arising out of an attempted abortion. The difference between that information and the indictment in the Gaston case, supra, is pointed out; and the court said of the indictment in the Gaston case: "That indictment was held good."

State v. Stapp, Div. II, 1912, 246 Mo. 338, 342(III), 151 S. W. 971, 973(III), relied upon by defendant, Roy, C., writing, after holding a case was not made on administering drugs to produce an abortion, stated that an indictment which does not state whether the death of the woman or any quick child occurred does not charge an offense. The statute is not analyzed and the earlier cases are not overruled or mentioned.

We think the analysis of the statute in State ex rel. Gaston v. Shields, supra, and State v. Dean, supra, to be logical and correct. The assertion in State v. Stapp is overruled on a charge of ''abortion'' under § 559.100. That death occur is not made a condition to the defined ''felony of abortion.'' We are not concerned with a death subjecting defendant to punishment for ''manslaughter.'' The effect of an ensuing death is only to subject a defendant to a greater penalty. Cases from other jurisdictions are in accord with the Gaston and Dean cases, supra. See, among others, Commonwealth v. Homer, 153 Mass. 343, 26 N. E. 872; Commonwealth v. Viera, Mass., 109 N. E. 2d 171, 173[3]; Lohman v. People, 1 N. Y. (Comstock) 379, 383, 49 Am. Dec. 340, 342; State v. Gedicke, 43 N. J. Law 86, 92. Defendant's contention is overruled.

The prosecuting witness is single, twenty-eight years of age and employed by a governmental agency. By December 3, 1950, she suspected that she was pregnant and confided the fact to two friends who, on January 10th, took her to the home of defendant. Defendant discussed her condition at some length and advised her to return on the 26th of January. On that date she and her girl friend returned to defendant's home. The prosecutrix described in minute detail how defendant, by the use of an instrument, attempted to induce a miscarriage. We need not detail these facts. She paid defendant seventy-five dollars and she and her friend returned to their rooms. By the following morning she was quite ill and was taken to the city hospital. An examination by a resident physician revealed ''an incomplete abortion.'' Her testimony was corroborated in many respects by other witnesses and circumstances. A prosecutrix's moral implication is for the jury's consideration in weighing her testimony, but a conviction may be had on her uncorroborated testimony. 1 C. J. S. 338, § 35; 1 Am. Jur. 151, § 53. Prosecutrix testified that except for the symptoms usually attending pregnancy her health was good; that she carried on her normal pursuits and had been working regularly; and that she had not consulted a physician, considering such action not necessary. The physician attending her at the city hospital testified that in his opinion her pregnancy would not have bothered her and she could have tolerated the term of pregnancy. In these circumstances, irrespective of the defendant not being a physician, the State's proof sufficiently demonstrated the essential elements of the offense, including proof of the fact that the operation was not neces-

sary to preserve the life of prosecutrix or of an unborn child. State v. Fitzgerald, Mo., 174 S. W. 2d 211.; State v. Gunther, Mo., 169 S. W. 2d 404; State v. De Groat, 259 Mo. 364, 168 S. W. 702. The case was for the jury.

 It is contended that the admission of "exhibit one" was error. Defendant says that there was no testimony connecting the instrument with the defendant in connection with this particular offense, and that its introduction in evidence was unjustly inflammatory and deprived the defendant of a fair trial. On cross-examination prosecutrix testified that on January 28th, which was two days after the alleged offense, she described the instrument to the officers. Defendant was arrested on January 28th; and at that time the police, with defendant's permission, searched the upstairs bedroom and found a rubber sheet, certain pills and liquids and in a small black suitcase, in a closet, found the instrument in question, "an instrument similar to a syringe," which defendant told the police was for her personal use. There can be no doubt that physical objects which furnish evidence may be submitted to the senses of the jury. Such demonstrative evidence is a direct physical illustration of a fact taking the place of an oral description by witnesses. As a general rule such demonstrative evidence must meet the tests of relevancy, materiality, probative force and reasons of policy in the administration of justice. State v. Wynne, 353 Mo. 276, 182 S. W. 2d 294; 2 Wharton, Criminal Evidence, §§ 755, 756, 757; 22 C. J. S., 1201, §§ 708-710. And the objects must be identified as connected with the offense or with the defendant, and when such objects are not properly identified or connected with the offense and their use and exhibition before the jury is inflammatory and results in unfair prejudice it is prejudicially erroneous to receive them in evidence. State v. Wynne, supra.

As stated hereinabove, aside from the syringe, the prosecuting witness described in detail defendant's attempt to induce an abortion. Without reference to said exhibit one, the prosecutrix on direct examination described the instrument used as being eighteen inches long. She said: "And she called it a spray gun. That is something like—one part of it did resemble it, and it had a handle that wasn't a wooden top like you would see on fly sprays but just a curved handle that perhaps three or four fingers would fit on and the one end of it was about this big around, about three inches in diameter I would say, or maybe two and a half, then the other end of the instrument was a long tube about five and a half or six and a half inches long and that was just a little tube about as big as my finger, that would be about a half inch in diameter * * *." Prosecutrix testified that she saw defendant employ the instrument. Upon her re-direct examination she was handed the exhibit and asked "do you know what type of instrument this is? A. Do I know what it is called? No. Q. Have you ever seen an instrument like this before? A. No, sir. * * * Q.—You

testified about an instrument yesterday. I will ask you, was there any resemblance between your testimony of the instrument yesterday and this State's Exhibit No. 1? A. It was an instrument like that. * * * Q. All right. Did you answer that question? A. I said, 'Yes.' It was one like that. Q. It was one like it? A. Yes, it looked to be just like it." When presented to the doctor he said that he had not seen an instrument like exhibit one. He said, "I would say it is a syringe of some sort; it has a plunger and a tip on it here for some reason or other." It was his opinion, however, that such an instrument "if it were used properly * * * or, improperly, as the case may be" could produce an abortion. The officers found the instrument in defendant's home in the room in which the abortion was attempted and it was a reasonable inference that the exhibit or one "just like it" was used by defendant upon the prosecuting witness and its reception in evidence may not be said to constitute prejudicial error. State v. Evans, Mo., 237 S. W. 2d 149, 151[1,2,4,5]; State v. Smith, 357 Mo. 467, 209 S. W. 2d 138, 140[6]; State v. Richetti, 342 Mo. 1015, 119 S. W. 2d 330, 339; People v. Ramsey, 83 Cal. App. 2d 707, 189 P. 2d 802; State v. Grissom, 35 N. M. 323, 298 P. 666; 1 C. J. S. 335, § 27; 22 C. J. S. 1203, §§ 709, 712; 1 Am. Jur. 149, § 44; 2 Wharton, Criminal Evidence, 1290, §§ 761, 762; Annotation, 15 A. L. R. 2d 1102, § 7.

██ ██ It is stated Officer Green testified "that the defendant had failed to make a statement after her arrest" and this was error. The situation developed in this manner. Officer Fritsche arrested defendant at her home. At the close of his cross-examination, defense counsel, upon receiving an affirmative answer to whether the officer asked defendant about this matter, stated: "Tell the court and jury what she told you. A. She said she had never done anything like that and she never heard of any person by that name."

Officer Green followed Officer Fritsche on the stand. He had accompanied Officer Fritsche, and after stating they arrested defendant, the following occurred:

"Q. What, if anything, did you do after her arrest, please? A. After her arrest we confronted her with information which we had—

Mr. Hennelly: I object to that and ask it be stricken and the jury instructed to disregard it, if Your Honor please, and that a mistrial be declared.

The Court: No. I will overrule the objection. He hasn't—I don't know—

Mr. Hennelly: He is going to say he confronted her with something.
The Court: Did you have a conversation with her at that time?
The Witness: We did.
The Court: Don't say, now, what the conversation was.
The Witness: We did.
The Court: Did she make any statement to you at that time?

The Witness: She didn't make any statement concerning—

The Court: Did she make any statement to you at that time concerning this alleged matter?

The Witness: No, sir.

The Court: All right.

Q. Following this conservation what, if anything, did you do, please, at the Parker street address? A. We received information from—·

The Court: No, no, no, Officer. He asked you what you did.

The Witness: We searched the home.

The Court: All right."

The contention is overruled for several reasons. Defendant is not in a position to complain because defense counsel in his cross-examination of Officer Fritsche first opened up the subject matter of statements made by defendant at the time of her arrest. State v. Cropper, 327 Mo. 193, 36 S. W. 2d 923, 927[5]; State v. Massey, 358 Mo. 1108, 219 S. W. 2d 326, 330[6], and cases cited. No doubt, the court had in mind Officer Fritsche's testimony. Exercising caution to protect defendant's rights, the court questioned Officer Green and as soon as Officer Green stated defendant did not make any statement concerning the matter on trial dropped the inquiry and restricted the witness to testimony of what was done. The objection interposed did not claim an infringement of defendant's rights against self-incrimination, the issue now stressed. State v. McKeever, 339 Mo. 1066, 101 S. W. 2d 22, 32; State v. Hepperman, 349 Mo. 681, 696, 162 S. W. 2d 878, 885, 886. In State v. Battles, 357 Mo. 1223, 212 S. W. 2d 753, 756[6-11] the following occurred: " 'Q. Did the defendant make any statement there about anything? A. No, sir. Mr. Shenker: We will object to that, if the court please. The Court: Overruled. Mr. Shenker: Exception. A. He did not.' " The court pointed out that counsel's objection was insufficient and, in addition, said, "There can be no doubt of the fact that the question asked the witness was proper because if the appellant had voluntarily made any statement against interest it would have been admissible. Voluntary confessions are always admissible." The instant situation differs from that shown in the State v. Allen cases, Mo., 235 S. W. 2d 294, 296[1], and, second appeal, 251 S. W. 2d 659; State v. Dowling, 348 Mo. 589, 154 S. W. 2d 749, 755; State v. Bowdry, 346 Mo. 1090, 145 S. W. 2d 127, 129[5].

 The claim that instruction one was a comment upon the evidence and prejudicial is related to the assignment that the evidence was insufficient to warrant her conviction. The instruction, in the beginning, hypothesized a finding that defendant "did wilfully, feloniously, and unlawfully use and employ in and upon the body and womb" of the prosecutrix "a certain instrument, and did then and there wilfully, feloniously, and unlawfully thrust and force said instrument into the body and womb" of the witness "with intent then and

there to promote and produce a miscarriage and abortion * * *.''
It is urged that this phase of the instruction is a comment upon the
evidence because there is no clause attached to the instruction re-
quiring the jury to ''so find but it is merely set out as a statement of
the Court.'' However, immediately preceding the quoted language,
the instruction plainly says, ''The Court instructs the jury that if you
find and believe from the evidence in this case, beyond a reasonable
doubt, in the light of the Court's instructions that'' in the City of St.
Louis, Missouri, on January 26, 1951, ''Sophie Celine Miller, did wil-
fully * * *.'' Thus the instruction plainly requires the jury ''to
find'' the facts hypothesized and is not a comment upon the evidence
or an imploration by the court to return a verdict against the appel-
lant. State v. Sapp, 356 Mo. 705, 203 S. W. 2d 425, 432; State v.
Talbert, 354 Mo. 410, 189 S. W. 2d 555. Following the above quoted
language the instruction proceeds, ''she being then and there pregnant
and in good health, *if you so find,* said act, *if any,* not being then and
there necessary to preserve the life of * * *, *if you so find,* or that
of an unborn child * * * and said act, *if any,* not being then and
there advised by a duly licensed physician to be necessary for that
purpose, and that death did not result * * * then you will find the
defendant guilty of the offense of Abortion; *and unless you find the
facts to be you will acquit the defendant.''* It is urged that this phase
of the instruction and its terminology presumes that a duly licensed
physician did not advise the abortion and does not require the jury to
find this essential element. If what has been previously said is not suf-
ficient to dispose of this objection, it should suffice to point out that
similar objections to almost identical instructions have been previously
considered and overruled. State v. Fitzgerald, Mo., 174 S. W. 2d 211,
213; State v. Johnson, Mo., 246 S. W. 894, 896; State v. Bickel, Mo.,
177 S. W. 310, 313.

 The remaining assignments of error may be considered to-
gether. It is urged that the trial court prejudicially erred in failing
to declare a mistrial when the circuit attorney indirectly commented
upon defendant's failure to testify. It is also urged that the trial court
permitted an assistant circuit attorney to make improper prejudicial
remarks in his argument to the jury. A closely related claim is that
during the cross-examination of prosecutrix the trial court improperly
embarrassed and threatened defense counsel in such a manner as to
unduly prejudice defendant and deprive her of a fair trial. If any of
these assignments of error are well taken the defendant is entitled
to a new trial.

The first claim means that defendant's privilege against self-incrim-
ination (Mo. Const., Art. 1, § 19, § 546.270) was improperly violated in
the prosecuting attorney's opening statement. He explained, in a
general way, the procedure in a criminal case, the purpose of opening
statements, and that following the State's opening statement the

defendant, at her election, could also make an opening statement. Among other things, he said, "Immediately after that takes place the State will put on its case, all the witnesses that the State has. *Following that the defendant will put on his side of the case.*" The trial court sustained defendant's objection that the italicized portion violated defendant's right against self-incrimination, instructed the jury to disregard the statement, and ordered it stricken from the jury's consideration. ■■■ The court refused, however, to declare a mistrial. It is not necessary to say whether the court's action was sufficient in the circumstances to erase any possible prejudice (Annotation, 84 A. L. R. 784, 795) because the statement was not such a reference to the defendant's failure to testify as to violate her right against self-incrimination. In State v. Lee, Mo., 225 S. W. 928, 929[1], a larceny case, the prosecuting attorney in his opening statement related what a policewoman would testify concerning a stolen coat and he said "after we show that it devolves upon the defendant to make any explanation as she sees fit." It was held that the remarks did not refer to the individual testimony the defendant would be required to produce and was not a comment upon her failure to testify. Likewise the statement complained of here in the opening statement was not such a comment and was a correct and proper statement of the procedure in a criminal case even though the defendant did not subsequently elect to testify in person or to offer any evidence in defense of the charge. State v. Johnson, 362 Mo. 833, 245 S. W. 2d 43, 46[1, 5].

The second claim of infringement of the right against self-incrimination arose in the course of the prosecuting attorney's argument to the jury. In the trial of the case, particularly on cross-examination, whether the prosecuting witness had given the police a statement while she was at the hospital became an issue. The prosecuting attorney said, "Now, there has been a lot of testimony as to whether or not she gave them a statement—whether or not she gave them a statement. Now, I submit to you ladies and gentlemen that the only evidence of what happened out there would have come from * * [the prosecuting witness]; the only evidence—." The court immediately sustained defendant's objection that the statement was a comment on defendant's failure to testify but refused to declare a mistrial. Another issue in the case was the unexplained absence of one of prosecutrix's girl friends as a witness. The prosecuting attorney reviewed what effort the evidence disclosed the State had made to locate her and then he said, "Yet, when the time comes for trial, she is not present. Where is she? I don't know where she is. If I knew where she was she would be here today. The police officers don't know where she is. They would have her in here. Maybe Sophie Miller knows where she is." Defendant here interposed a general objection. The court sustained the objection and

instructed the jury to disregard the statement. As to another witness, defense counsel called the jury's attention to his absence and said, "He was not even endorsed as a witness." State's counsel, in objecting, said, "He can call them just as well as the State can." The court overruled the objection and directed defense counsel to proceed, which he did. As it was with the opening statement, these statements were not allusions to the defendant's failure to testify and did not infringe the right against self-incrimination. State v. Watkins, 337 Mo. 901, 912, 87 S. W. 2d 184, 190; State v. Pollnow, Mo., 14 S. W. 2d 574, 575[5, 6]. They are certainly not comparable to the references in State v. Robinson, Mo., 184 S. W. 2d 1017, and State v. Shuls, 329 Mo. 245, 44 S. W. 2d 94, 96[9].

The claim that the trial court improperly embarrassed and humiliated defense counsel is based upon this incident: On the second day of the trial defense counsel resumed his cross-examination of prosecutrix and near its conclusion counsel asked whether during the recess she had talked to certain officers and Mr. Bruntrager, an assistant prosecuting attorney, and she said, "We didn't discuss the case, no. Q. You didn't discuss this case with Mr. Bruntrager since you have been down here? All right." Then counsel engaged in the following colloquy: "Mr. Bruntrager: She didn't get a chance to answer. (Witness)— A. Yes, Mr. Bruntrager and I have—he told me to come in here and— Q. Don't tell what Mr. Bruntrager told you. That will be hearsay, and we don't want you to shock the jury. ▌
The Court: Mr. Hennelly, there is no occasion for that remark, none whatsoever—no occasion for that at all. It will be stricken from this record and, members of the jury, you will disregard that remark on the part of Mr. Hennelly." Without the hearing of the jury defense counsel objected to the court's remarks and after the objection was completed the court, in the hearing of the jury, said, "The objection will be overruled; the request for a mistrial will be denied, and let's not have any more remarks like that, Mr. Hennelly, on your part, during the course of this trial or I'll deal with the situation accordingly. All right." Defense counsel then renewed his objection to the court's additional remarks and moved for a mistrial. Here the court did not unjustifiably and plainly threaten counsel with punishment for contempt of court or in fact improperly chastise and fine counsel as in State v. Montgomery, Mo., 251 S. W. 2d 654, 657[3], and State v. Davis, 284 Mo. 695, 225 S. W. 707, 710[10]. We think counsel's statement was uncalled for and the court's remarks cast no reflection on defendant or her defense or indicated how the court thought the case should be decided. State v. Thursby, Mo., 245 S. W. 2d 859, 863. All the circumstances considered, it may not be said that the court so unjustly or unfairly humiliated and embarrassed defense counsel as to prejudice the defendant's right to a fair trial. State v. Montgomery, Mo., 223 S. W. 2d 463, 469; State v. Hudson, 358 Mo. 424, 215 S. W.

2d 441, 443; State v. Murphy, 341 Mo. 1229, 111 S. W. 2d 132, 135; State v. Thursby, supra.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.