**STATE of Missouri, Respondent,**

v.

**Charles STILLMAN, Appellant.**

No. 45619.

Supreme Court of Missouri,

Division No. 2.

May 13, 1957.

Shaw & Smith, Clayton, for appellant.

John M. Dalton, Atty. Gen., J. Richard Roberts, Sp. Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

Charles Stillman, a tuck pointer, has been found guilty of performing an illegal abortion, and his punishment has been fixed at four months and one day in jail and a fine of one thousand dollars. He does not question the sufficiency of the evidence to sustain his conviction, except in one respect. That respect is his contention that the state "failed to prove by any competent evidence that the complaining witness * * * was in a state of good health prior to and including the date of the alleged abortion."

The prosecutrix is a young divorcee, the mother of two children. Realizing, in December 1954, that she was pregnant, she made an appointment and went to Stillman's home, on January 7, 1955, where, for a fee of $50, he performed the acts inducing an abortion. In the afternoon she became quite ill and was taken to the St. Louis County Hospital where Dr. Pfeffer, a gynecologist, treated her for "an inflammation of the uterus, secondary to abortion." She was in the hospital seven days and on January 23, 1955, returned to her regular work as a telephone operator. Except for colds, cramps, and an injury due

to an automobile accident she had not missed "any days of employment" because of illness. It is in connection with the automobile accident in August 1954 that the appellant claims there has been a failure of proof as to her prior good health.

She was a passenger and was thrown into the windshield of an automobile when it was involved in a collision. As a result of the accident she was "unconscious" for three or four minutes and several stitches were taken in her forehead. She was in the hospital "an hour or so" and away from work "a day or so," and about a week after the accident the stitches were removed. Thereafter and up to the time of the trial she had headaches due to the head injury. Because of these facts it is urged that there was a total failure of proof of her prior good health.

■ In so contending the appellant is laboring under the misapprehension that proof of the prosecutrix' prior good health is an essential element of the offense of an unlawful abortion. The exceptions in the statute (V.A.M.S. § 559.100) are "(unless the same is necessary to preserve her life or that of an unborn child, or if such person is not a duly licensed physician, unless the said act has been advised by a duly licensed physician to be necessary for such a purpose)." The prosecutrix had not consulted a physician concerning her pregnancy prior to the abortion and so, obviously, the abortion had not been advised by a physician. State v. Fitzgerald, Mo., 174 S.W.2d 211. The essence of the offense is the nonnecessity of the abortion, or here, the appellant being a tuck pointer, the act not having been advised by a duly licensed physician to be necessary for the purpose of saving her life or that of the unborn child. In addition to the inferences to be drawn from the testimony of the prosecutrix, Dr. Pfeffer testified that after completing a curettement he made a physical examination of the prosecutrix with "regard to her general physical condition, and particularly her female condition." It

was his opinion, except for the abortion and its consequent ill effects "that she would have had a normal pregnancy. Judging by the condition after the infection had been corrected, there were no chronic diseases." Thus the state established the essential element of the nonnecessity of the abortion.

■ Inferentially, if not directly, the state established her good health with respect to her ability to endure a normal pregnancy even though the doctor did not know of the automobile accident and refused to express a neurological opinion as to the effect of her head injury. But the appellant's misapprehension comes about in assuming that proof of prior good health of the prosecutrix is an essential element of the offense. It is true that in State v. Smith, 344 Mo. 1129, 130 S.W.2d 550, 553, a case involving an osteopathic physician, the court said that it was incumbent upon the state "to prove that the operation for production of an abortion or miscarriage was not necessary in order to preserve the life of the woman or that of an unborn child, if performed by a licensed physician, or if performed by some other person that it was not advised as so necessary by a licensed physician, *and that a conviction cannot be permitted to stand in absence of substantial evidence tending to show that the deceased was in good health before the operation and that an operation was not necessary.*" But the court did not mean to say, by the italicized language, that proof of the prior good health of the prosecutrix was an essential element of the offense. It had been recognized prior to the Smith case, as it has since, that the state makes a prima facie case of the essential of nonnecessity for the operation by proof of the prior good health of the prosecutrix, and it should be emphasized that the statute means and the proof is with respect to her ability to safely and successfully endure the pregnancy. State v. Hacker, Mo., 291 S.W.2d 155, 158; State v. Miller, 364 Mo. 320, 261 S.W.2d 103; State v. Hawkins, Mo., 210 S.W. 4;

State v. DeGroat, 259 Mo. 364, 168 S.W. 702. Disregarding the fact that the appellant is not a physician, the state's prima facie case is supported by the reasonable inferences and the court did not err in refusing to direct a verdict for the reason assigned.

The other point briefed and argued by appellant's counsel is that the court prejudicially erred in permitting the prosecutrix to explain an answer "she gave defendant on cross-examination." It is said that she was permitted to detail a conversation with an "unknown man concerning the defendant," that the conversation was hearsay, did not permit of cross-examination of the unknown witness and violated the constitutional guaranty of his right "to meet the witnesses against him face to face." Const. Mo., Art. 1, § 18(a). The objection in his motion for a new trial was not that his right of confrontation had been violated but that the conversation was not in the defendant's presence, was hearsay, and that he had no opportunity to cross-examine the supposed unknown witness.

The question the appellant seeks to raise came about in these circumstances: In cross-examination appellant's counsel asked the prosecutrix whether she had been to his office and talked to him about Mr. Stillman's giving her $500 so she could leave the city. Before answering the question the prosecutrix said, "Your Honor, may I make a statement, please?" Counsel insisted on a "yes" or "no" answer, and she answered, "Yes, I did." The court then said, "Now, your explanation." The witness said, "Your Honor, when I came out of the hospital, my brother-in-law David Mitchell came to my house, saw me himself, and he said there was a man wanted to talk to me and the man wanted to know—." There was an interruption and a colloquy as to whether someone else had told her something, and she continued, "He did. He said he had somebody who had wanted to talk to me, and he took me over to this man's house and the man—." De-

fense counsel's objection "that is the rankest form of hearsay" was overruled and the witness again continued, "He asked me, hadn't I got myself into a mess, and I asked him what he meant, so he proceeded to tell me." There was another objection that the testimony was hearsay, and after the court inquired of the witness whether she had finished her explanation, she said, "No, I haven't finished. He took me over to Flora Avenue, Mr. Beelik, and I told him I didn't want to talk to him and he said he had promised he would bring me by. * * * He said that he had heard about the trouble that I had gotten into, and he (Mr. Beelik) wanted to know— * * * My brother-in-law got out of the car and walked around to the front and he said he would stand there and see that nothing happened, that the man only wanted to talk to me. And as I stated before, I did not want to testify here, and so I told him. I did not want to testify, it was my fault for going to him as much as it was his fault for doing it. * * * And Mr. Beelik stated —." There was an objection to anything Mr. Beelik said out of the defendant's presence and the witness said, "There was no one there but he and I talking. There was three people besides the car." At this point the court stopped "the explanation" and there were no further objections or motions to strike the testimony.

Her statement really wasn't much of an explanation but who has not heard or made similar rambling, more or less meaningless, statements when confronted with an embarrassing question or fact? The people mentioned were not wholly "unknown," they were her brother-in-law, David Mitchell, and Mr. Beelik, whose connection with the case or any of the parties remains unknown. It does not appear, except in the vaguest way, that any of the conversation "concerned" the appellant. Appellant's counsel injected the subject of the $500 payment into the case, doubtless for the purpose of embarrassing and impeaching the witness, and lame as her justification may have been she was

entitled to give it. In part her testimonial was hearsay, and that part of it should have been excluded (State v. Hermann, Mo., 283 S.W.2d 617), but in view of the appellant's specific objections and the fact of his having injected the question, it is not demonstrable upon this record that the appellant's right to a fair trial was so unjustly infringed as to demand the granting of a new trial. State v. Crocker, Mo., 275 S.W.2d 293.

Aside from the two questions specifically briefed and argued (Supreme Court Rule 28.02, 42 V.A.M.S.), the transcript shows full compliance with all matters necessary to be considered by this court "upon the record before them." V.A.M.S. § 547.270. Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.